UNITED STATES of America,
Plaintiff–Appellee,

v.

William McDERMOTT, Defendant–
Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Daniel McDERMOTT, Defendant–
Appellant.

Nos. 93–2952, 93–3014.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 10, 1994.

Decided July 11, 1994.

See also: 822 F.Supp. 582.

Before LOKEN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and EISELE,* Senior District Judge.

JOHN R. GIBSON, Senior Circuit Judge.

William McDermott appeals his convictions for conspiring to violate civil rights in violation of 18 U.S.C. § 241 (1988), and willfully interfering with a federally-protected right, 18 U.S.C. § 245(b)(2)(B) (1988). William McDermott argues that his convictions must be reversed because the application of the statutes violates his First Amendment rights and the provisions are unconstitutionally vague and overbroad. William McDermott and Daniel McDermott both appeal their sentences.[1] We affirm William McDermott's conviction for conspiring to violate civil rights (Count I). We reverse William McDermott's conviction for willfully interfering with a federally-protected right (Count II) and remand that count for a new trial. We also conclude that the district court did not err in sentencing, and therefore affirm William McDermott's sentence as to Count I and Daniel McDermott's sentence.

Beginning in 1987 and through 1988, a group of teenagers, including brothers William McDermott and Daniel McDermott attempted to keep black persons out of Comiskey Park, a park located in the north end of Dubuque, Iowa. The evidence at trial showed a number of tactics the two used, including: waving baseball bats, axe handles, and knives; throwing rocks and bottles; veering cars towards black persons; and physically chasing black persons out of the park. There was also evidence that they spit on a number of black children as well as a fourteen-year old white handicapped girl. Their tactics culminated in the burning of a fifteen-foot tall cross in the park on April 1, 1988.

A jury convicted the brothers for conspiring to interfere with civil rights and interfering with a federally-protected activity. The court sentenced William McDermott to 84

Michael Frey, Cedar Rapids, IA, argued, for appellant William McDermott, and Thomas O'Flaherty, Cedar Rapids, IA, argued, for appellant Daniel McDermott.

Thomas Chandler, of the Dept. of Justice, Washington, DC, argued, for appellee.

---

* THE HONORABLE GARNETT T. EISELE, Senior United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. Daniel McDermott does not appeal his convictions. His only argument is that the district court erred in sentencing.

months on the conspiracy count and a 12–month concurrent term on the interference count. The court sentenced Daniel McDermott to 52 months on Count I and a 12–month concurrent term on Count II.

## I.

William McDermott first argues that the application of 18 U.S.C. §§ 241 and 245(b)(2)(B) to the expressive act of cross burning violates the First Amendment. He stresses that this is so particularly here where the symbolic act of burning a cross occurred in a public park, a traditional forum of free speech. *See Hague v. C.I.O.*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939).

This court en banc recently considered an applied challenge to a section 241 conviction in *United States v. Lee*, 6 F.3d 1297 (8th Cir.1993) (en banc) (per curiam), *cert. denied*, —— U.S. ——, 114 S.Ct. 1550, 128 L.Ed.2d 199 (1994). A jury convicted Lee under 18 U.S.C. § 241 after he constructed and burned a cross near an apartment building where several black families resided. *Id.* at 1297 (Gibson, John R., J., concurring) (plurality opinion). Lee contended that section 241, as applied, violated his First Amendment rights. *Id.* at 1299. A plurality of this court reversed the conviction because of errors in the court's instructions to the jury. *Id.* at 1301. This court recognized burning a cross may be protected expression under the First Amendment. *Id.* at 1299 (citing *R.A.V. v. St. Paul*, —— U.S. ——, ——, 112 S.Ct. 2538, 2547, 120 L.Ed.2d 305 (1992)) (plurality opinion); *id.* at 1305 (Lay, J., concurring and dissenting). We examined the difference between the protected expressive act of cross burning and the unprotected act of cross burning when it constitutes a threat or incites imminent lawless action under *Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) (per curiam). 6 F.3d at 1300–03. We explained that Lee could not be convicted for the protected activity of burning a cross, except in two circumstances. First, following the imminent lawless action exception in *Branden-*

*burg,* we concluded that Lee could be convicted if he burned the cross with the intent to advocate the use of force or violence and if the burning was likely to produce such action. *Lee,* 6 F.3d at 1304. We also concluded that Lee could be convicted for burning a cross if he intended to threaten the residents of the apartments or at least intended to cause residents to reasonably fear the imminent use of force or violence. *Id.* We concluded that the jury instructions were deficient because the court specifically instructed the jury that it need not find that Lee's actions constituted "a threat of force or the intimidation of physical fear." [2] *Id.* at 1300.

McDermott contends that *Brandenburg* and *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982), involved conduct more offensive, intimidating, and threatening than his act of burning a cross in a public park. In *Brandenburg,* a Ku Klux Klan leader was convicted under a state criminal syndicalism statute which proscribed advocating crime, sabotage, violence, or other unlawful means of terrorism as a means of obtaining reform. 395 U.S. at 444–45, 89 S.Ct. at 1828. The conviction arose after a rally where the leader burned a cross and threatened to "bury" black people. *Id.* at 446 n. 1, 89 S.Ct. at 1829 n. 1. The Supreme Court reversed the conviction because the indictment and jury instruction defined the offense in terms of mere advocacy, not "incitement to imminent lawless action." *Id.* at 449, 89 S.Ct. at 1830. In *Claiborne Hardware,* an officer of the NAACP in Mississippi gave several speeches seeking a boycott of white-owned businesses. His speeches included harsh words, including one statement: "[i]f we catch any of you going in any of them racist stores, we're gonna break your damn neck." 458 U.S. at 902, 102 S.Ct. at 3420. The Supreme Court concluded that the officer's addresses did not exceed the bounds of protected speech. *Id.* at 929, 102 S.Ct. at 3434. The Court focused on the fact that his lengthy addresses, although using strong language, generally contained an impassioned plea for black citizens

---

**2.** The court defined " 'threaten' and 'intimidate' to include 'a variety of conduct intended to harm, frighten, punish, or inhibit the free action

of other persons,' but not requiring 'a threat of physical force or the intimidation of physical fear.' " *Lee,* 6 F.3d at 1300.

to unify. *Id.* at 928, 102 S.Ct. at 3433. The Court classified the officer's speech as advocacy, rather than unprotected "fighting words." *Id.* at 927–28, 102 S.Ct. at 3433.

The government contends that William McDermott was convicted for engaging in a campaign of threatening and violent activity directed at black children, and that McDermott's participation in the cross burning was merely the final act in his threatening course of conduct. The government contends that the record is replete with evidence that McDermott's intent was not to express a view but to frighten black residents so that they would not use the park. The government points out that McDermott's attempts to avoid discovery after he burned the cross demonstrate that his intent was not the "protected activity of advocating an idea but was the unprotected activity of threatening or intimidating." *Lee,* 6 F.3d at 1303.

## II.

■ There is no doubt that many of McDermott's actions were not protected by the First Amendment. Throwing rocks and bottles, brandishing knives, baseball bats and axe handles, veering cars at people, and verbally threatening violence, are not entitled to First Amendment protection. *See R.A.V.,* —— U.S. at ——, 112 S.Ct. at 2546 ("threats of violence are outside the First Amendment"). The government argues that these acts alone fully support the convictions.

■ To analyze McDermott's challenge to his convictions we must, as we did in *Lee,* review in detail the jury instructions.[3] The district court instructed the jury that Count I of the indictment charged William McDermott and Daniel McDermott with conspiring to:

injure, oppress, threaten and intimidate African–American citizens ... in the free exercise and enjoyment of a right secured to them by the Constitution and laws of the United States, that is, the right to the full and equal enjoyment of the services, facilities, privileges, advantages and accommodations (sic) of a place of public accommodation, (sic) that is Comiskey Park, without discrimination on the grounds of race, color, or national origin.

The court further instructed the jury that the indictment charged that:

part of the plan and purpose of this conspiracy [was] that defendants William McDermott and Daniel McDermott ... would yell racial slurs and threats and brandish weapons in a threatening manner at African–American citizens in order to prevent them from enjoying the use of Comiskey Park.

It was also part of the plan and purpose of this conspiracy that defendants ... agreed to participate and did in fact participate ... in a cross burning in Comiskey Park in order to frighten and intimidate African–American citizens and so to prevent them from enjoying the use of Comiskey Park.

After reading to the jury the provisions of 18 U.S.C. § 241,[4] the court instructed the jury that there were four necessary elements of a section 241 offense:

*First:* Two or more persons must conspire, that is, there must be a conspiracy.

*Second:* The purpose of their conspiracy must be to injure, oppress, threaten or intimidate one or more persons.

*Third:* One of the victims must be a citizen of the United States.

*Fourth:* The conspiracy must be directed at the free exercise or enjoyment by such a United States citizen of a right or privilege

---

3. We reject the government's argument that McDermott waived his constitutional challenge to his conviction because he failed to object to the jury instructions. McDermott filed a motion to dismiss on the grounds that his prosecution violated the First Amendment, and thus, he adequately preserved this challenge for appeal. *See Terminiello v. Chicago,* 337 U.S. 1, 5, 69 S.Ct. 894, 896, 93 L.Ed. 1131 (1949).

4. The court instructed the jury that the "words of this statute that are pertinent to Count I read as follows:"

If two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; ..., [they shall be guilty of a crime against the United States].

secured by the Constitution or laws of the United States.

The court went on to define the conspiracy element as requiring three essential elements.[5] One of the elements was an agreement, commencing "in or about the fall of 1987 and continuing through April of 1988 ... with the specific intention of injuring, threatening, or intimidating a citizen in their (sic) enjoyment of public accommodations." The court also defined the words " 'injure,' 'oppress,' 'threaten,' or 'intimidate' " as used in Count I as words "not used in any technical sense, but ... cover[ing] a variety of conduct intended to harm, frighten, punish or prevent the free action of other persons."

McDermott's argument that his conviction on Count I is based on the expressive act of burning a cross fails for three reasons. First, the instructions state that the McDermotts reached an agreement commencing in the fall of 1987 and continuing through April 1988. The Count I instructions did not single out the cross burning as part of the conspiracy. The indictment, which the court included in its instructions to the jury, alleged two separate plans or purposes of the conspiracy. First, the instruction alleged that the McDermotts "would yell racial slurs and threats and brandish weapons in a threatening manner ... in order to prevent [blacks] from using the park." The instruction described another plan or purpose of the conspiracy as including the McDermotts' participation in the cross burning "in order to frighten and intimidate African–American citizens and so to prevent them from enjoying the use of Comiskey Park." McDermott does not contend that the first component of the instruction (yelling racial slurs, threats, and brandishing weapons) invokes any First Amendment concerns. Furthermore, because the instructions required the jury to find that the McDermotts' agreement began

in the fall of 1987 and continued through April 1988, we can only conclude that the jury found, at a minimum, that McDermott's agreement to "injure, oppress, threaten, or intimidate" spanned the entire 18–month period, and was not limited to the April 1 cross burning. Our conclusion is further supported by the first plan or purpose of the conspiracy, which describes a course of conduct covering the entire period. Thus, even if the cross burning qualifies as protected expression, McDermott does not argue that any of his other conduct during the eighteen-month timeframe is entitled to any First Amendment protection. Accordingly, we can only conclude that the jury did not base its conviction on Count I solely on the April 1 cross burning.

Second, in contrast to *Lee*, the Count I instructions contained no language informing the jury that it need not find "a threat of force or the intimidation of physical fear" in order to convict. *Cf. Lee*, 6 F.3d at 1300. Rather, the instructions required the jury to find that McDermott acted with the intent to injure, oppress, threaten, or intimidate persons. The court clarified that these words covered a variety of conduct intended to "prevent the free action of other persons." Thus, in order to convict, the jury had to find that McDermott's activities caused more than "hurt feelings, offense, or resentment." *See R.A.V.*, —— U.S. at ——, 112 S.Ct. at 2559. (J. White, concurring). *See also United States v. Gilbert*, 813 F.2d 1523, 1529 (9th Cir.) (expression which inflicts injury or tends to incite an immediate breach of the peace is arguably unprotected), *cert. denied*, 484 U.S. 860, 108 S.Ct. 173, 98 L.Ed.2d 127 (1987). *See also United States v. Mitchell*, 463 F.2d 187, 191 (8th Cir.1972) (jury instruction required the jurors to convict only if it found defendant made violent threats in furtherance of a scheme to extort money), *cert. denied*, 410 U.S. 969, 93 S.Ct. 1449, 35

---

**5.** The court instructed that a criminal conspiracy has three essential elements:

*One*, commencing in or about the fall of 1987 and continuing through April of 1988, two or more persons reached an agreement or came to an understanding with the specific intention of injuring, threatening, or intimidating a citizen in their enjoyment of public accommodations;

*Two*, a defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect;

*Three*, at the time a defendant joined in the agreement or understanding, he knew the purpose of the agreement or understanding.

L.Ed.2d 705 (1973). The instructions required the jury to find that McDermott's actions constituted a threat of significant magnitude that it prevented others from exercising their federal right to use the park.

Third, as we have stated, the instructions required that the intent of the agreement be to "prevent the free action of other persons." Instruction 15 also specifically alleged that McDermott's actions "prevent[ed] [blacks] from enjoying the use of Comiskey Park." The instruction in *Lee* only required that the conduct "harm, frighten, punish, or *inhibit* the free action of other persons," and did not require "a threat of physical force or the intimidation of physical fear." 6 F.3d at 1300 (emphasis added). We are persuaded that the use of the word "prevent" saves this instruction from one of the problems we encountered in *Lee*. As Chief Judge Arnold pointed out in his dissent to the *Lee* panel opinion, there is "a great deal of speech [that] is sufficiently forceful or offensive to inhibit the free actions of persons against whom it is directed, in the sense that it would make someone hesitate before acting in a certain way. Indeed, that is the very purpose of speech: to influence others' conduct." *United States v. Lee*, 935 F.2d 952, 959 (8th Cir.1991), *vacated in part, and different result reached on reh'g en banc, Lee* 6 F.3d at 1297. Webster's Third New International Dictionary (unabridged 1981) instructs that "prevent" means "to deprive of power or hope of acting, operating, or succeeding in a purpose" or "to keep from happening." *Id.* at 1798. Thus, "prevent" denotes a more forceful and threatening course of conduct than merely making someone "hesitate before acting in a certain way." *See Lee*, 935 F.2d at 959 (Arnold, R., C.J., dissenting).

For these reasons, we conclude that McDermott's conviction is not based on protected First Amendment expression, and we affirm William McDermott's conviction on Count I.

6. The court instructed the jury that the statute read:

> Whoever ... by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with ... any person because of his race [or] color

and because he is or has been ... participating in or enjoying any benefit, service, privilege, program, facility or activity provided or administered by any State or subdivision thereof ... [shall be guilty of a crime against the United States].

## III.

The court's instructions pertinent to Count II are narrower than those in Count I.

As to Count II, the court also read the indictment to the jury explaining that the grand jury charged that on or about April 1, 1988, William McDermott and Daniel McDermott "by force and threat of force, that is, by burning a cross in Comiskey Park, did willfully injure, intimidate and interfere with, and attempt to injure, intimidate, and interfere with, African–American persons because of their race and color and because they were and had been enjoying a benefit ... that is ... Comiskey Park."

After reading the relevant provisions of section 245(b)(2)(B) to the jury,[6] the court defined the elements of Count II:

*First:* The defendants must have acted by force or threat of force.

*Second:* The defendants must have injured, intimidated, or interfered with African–Americans or attempted to injure, intimidate, or interfere with African–Americans.

*Third:* The defendants must have acted because of the race and color of African–Americans and because of their enjoyment of the use of a facility provided by Dubuque, Iowa, in this case a public park, Comiskey Park.

*Fourth:* The defendants must have acted willfully.

The court defined "force" as used in Count II of the indictment as "power, violence, compulsion or restraint exerted upon or against a person or thing." The court explained: "So if you find beyond a reasonable doubt that the defendants burned a cross in order to threaten African–Americans, you may conclude that a threat of force was used as that term is meant in the statute."

The court further explained that "the words 'injure,' 'intimidate,' and 'interfere

with' have no technical meaning; they are to be understood in their ordinary meaning ... [and that] [i]t is not necessary that actual injury, intimidation or interference be proved, only that a defendant's conduct was intended to injure, intimidate or interfere with the protected right."

The shortcoming of the government's argument with respect to Count II is that although many of McDermott's actions were not protected by the First Amendment, the Count II jury instructions specified only the cross burning as an act constituting a "threat." Thus, unlike the Count I instructions, the Count II instructions implicate pure First Amendment concerns. As we learned from *Lee,* a cross burning may or may not be protected expressive conduct. Like *Lee,* the instructions here failed to explain the difference between protected expressive activity and unprotected threats or incitement to imminent lawless action. Moreover, the Count II instructions permitted the jury to conclude that a threat of force was used if it found that McDermott "burned a cross in order to threaten." By wording Instruction 31 in permissive terms, however, the court allowed the jury to convict without finding that the McDermotts burned the cross with the intent to threaten the use of force or at least cause blacks to reasonably fear the imminent use of force or violence. *See Lee,* 6 F.3d at 1304; *United States v. J.H.H.,* 22 F.3d 821, 825–26 (8th Cir.1994). These instructions do not square with *Brandenburg* or *Lee,* and constitute reversible error. Accordingly, we reverse William McDermott's conviction on Count II, and remand that count for a new trial. When this case is retried, the court's instruction should be based on the discussion of the *Lee* plurality opinion and *Brandenburg.*

■ McDermott also argues that the statutes are vague and unconstitutional on their face. At the outset, we reject McDermott's argument that 18 U.S.C. §§ 241 and 245 are unconstitutional on their face. We held in *Lee* that section 241 was not facially unconstitutional. 6 F.3d at 1300. The statutes here differ from the ordinance the Supreme Court found unconstitutional in *R.A.V.* because the ordinance in *R.A.V.* prohibited the use of "fighting words" that insult, or provoke violence, on the basis of "race, color, creed, religion or gender." — U.S. at —, 112 S.Ct. at 2547. The Court reasoned that because the ordinance only proscribed a class of "fighting words" deemed particularly offensive by the city, the ordinance violated the rule against content-based discrimination. *Id.* at —, 112 S.Ct. at 2547–48. Sections 241 and 245 are more like the statute in *Wisconsin v. Mitchell,* because they are directed at conduct not protected by the First Amendment. — U.S. —, —, 113 S.Ct. 2194 at 2201, 124 L.Ed.2d 436 (1993).

■ We likewise reject McDermott's argument that the statutes are vague because they do not give notice that it is illegal to burn a cross, and overbroad because they include protected speech. *See J.H.H.,* at 828 (rejecting vagueness and overbreadth arguments). The statutes do not make it illegal to burn a cross. Rather, the statutes make it illegal to conspire to threaten or intimidate others in the exercise of federal rights. Likewise, the statutes are not overbroad. The statutes regulate conduct, not expression by prohibiting conspiracies to threaten or intimidate others in the exercise of federal rights. *See Terminiello v. Chicago,* 337 U.S. 1, 6, 69 S.Ct. 894, 896, 93 L.Ed. 1131 (1949) (breach of peace conviction reversed where instruction allowed conviction if speech stirred people to anger, invited public dispute, or brought about a condition of unrest). Threats of violence are outside the protection of the First Amendment. *See R.A.V.,* — U.S. at — — —, 112 S.Ct. at 2546–47; *Claiborne Hardware,* 458 U.S. at 911–16, 102 S.Ct. at 3424–27 (although offensive and coercive speech is protected by the First Amendment, threats of violence are not); *see also United States v. Bellrichard,* 994 F.2d 1318, 1322 (8th Cir.) ("The First Amendment affords no protection to those who utter direct threats of force and violence"), *cert. denied,* — U.S. —, 114 S.Ct. 337, 126 L.Ed.2d 282 (1993); *United States v. Hayward,* 6 F.3d 1241, 1250 (7th Cir.1993) ("some forms of expression, in this case cross burning used to intimidate, are harmful and damaging to others and, as such, do not enjoy the protecting cover of speech in the constitu-

tional sense"), *cert. denied,* — U.S. —, 114 S.Ct. 1369, 128 L.Ed.2d 46 (1994).

## IV.

■ William and Daniel McDermott both challenge their sentences, particularly the district court's upward adjustment of their sentences based on the "vulnerable victim" provision contained in United States Sentencing Commission, *Guidelines Manual,* § 3A1.1 (Nov. 1993).[7]

Section 3A1.1 of the guidelines allows a court to increase a defendant's offense level by two "[i]f the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct."

The district court found that the victims in this case were unusually vulnerable for several reasons. First, the district court found that the few blacks living in the north end of Dubuque were racially isolated, and thus particularly susceptible to threats of racial violence. Second, the district court found that the victims were vulnerable on the basis of their young age, which ranged from fourteen to sixteen. Finally, the district court found that one of the fourteen-year old victims was physically disabled requiring the use of a wheelchair, and that the McDermotts preyed upon her handicap in connection with their activities.

The brothers attack the district court's reasoning on several grounds. They argue that the vulnerable victim enhancement is duplicative because blacks are the typical victims of a section 241 crime. This argument, however, has already been rejected by at least two other circuits. *United States v. Skillman,* 922 F.2d 1370, 1377–78 (9th Cir. 1990), *cert. dismissed,* — U.S. —, 112 S.Ct. 353, 116 L.Ed.2d 275 (1991); *United States v. Salyer,* 893 F.2d 113, 115–16 (6th Cir.1989). We also reject the argument that the victims' young ages cannot support a finding of vulnerability because the McDer-

motts were only a few years older at the time of the offense. Similarly, we reject the McDermotts' contention that they did not target the handicapped girl based on her handicap, and that she cannot be a vulnerable victim because she is white. These arguments are inconsistent with the court's findings and the evidence at trial. The fact that the victim is white is of no consequence because the evidence at trial showed that she was harassed because of her friendship with blacks.

We affirm William McDermott's conviction on Count I, reverse his conviction on Count II, and remand with instructions that a new trial be held on Count II. We affirm William McDermott's sentence as to Count I and Daniel McDermott's sentence.

---

**7.** Although we reversed William McDermott's conviction on Count II and remanded that count for a new trial, the district court sentenced Wil-

liam McDermott to 84 months on Count I. Thus, we consider his appeal of his sentence.