**UNITED STATES of America,
Plaintiff,**

v.

**Brian Keith BELL, Defendant.**

**No. CRIM.02–84.**

United States District Court,
S.D. Iowa,
Central Division.

June 4, 2002.

Joel W. Barrows, U.S. Atty., Des Moines, IA, for U.S.

B. John Burns, III, Iowa Fed. Public Defender, Des Moines, IA, for defendant.

## ORDER RE: DEFENDANT'S MOTION TO DISMISS

LONGSTAFF, Chief Judge.·

The Court has before it defendant Brian Keith Bell's motion to dismiss filed May 10, 2002. The government has resisted the motion, and the Court does not believe a hearing is necessary on this matter at this time.

Mr. Bell received supplemental security income ("SSI") from 1994 through 1998, when he became ineligible for further benefits as a result of money he inherited. In April 2001, Mr. Bell reapplied for SSI benefits, but his application was denied pending the receipt of further medical information concerning his present condition. The administrative review process of this application appears to still be pending.

In March of 2002, Mr. Bell sent letters to both J. Michael Johnson of the Social Security Administration ("SSA") Office of Hearings and Appeals in Des Moines, as well as a letter to the State of Iowa Disability Determination Service in Des Moines. These allegedly long, hand-written letters contained various statements which have been excerpted for the Court by both the United States and the defendant; however, neither party has produced copies of the letters in full. As an initial matter, it seems that some of the excerpted portions of these letters have been taken out of context which the Court believes may distort the meaning, if there is any coherent meaning, to Mr. Bell's letters. From the small quotes produced, it appears that Mr. Bell's use of grammar and syntax are juvenile and unsophisticated. It also appears from the quotes provided that Mr. Bell's ranting may be symptomatic of his mental disabilities. Nevertheless, the government contends that the letters constitute threats in violation of 18 U.S.C. Sections 115(a)(1)(B), 115(b)(4) (Influencing, Impeding, or Retaliating Against a Federal Official) and Section 876 (Mailing Threatening Communications). According to the limited excerpts submitted, Mr. Bell's statements are said to include the following:

*Letter to SSA Office of Hearings & Appeals*

- "I hate most of the human race."
- "My regular personality is friendly and wouldn't hurt anyone and controls the monster alter ego that constantly wants to destroy everything and every scumbag in sight."
- "When I snap I feel like I'm going to explode and hurt some who deserves it."
- "I'm panicky and feel like I'm going to lose control."
- "I built myself up with weights and throwing punches. I am 2–3 times as strong as the average fool and am a world class puncher."
- "... if someone done me wrong or confronted me I could quickly beat them into a coma. I was extremely distraught and prepared to die."
- "... wrote a letter to them (DHS) about not being able to pay my water bill and having no money for gas or anything else. I said I was about to have a showdown among other things with the SSA."
- "... Dr Mikkiliniand he diagnosed me with an 'Impulse disorder and borderline personality'. He testified in court that I was a danger and should be put in a mental hospital...."
- "This evil process is making my condition unbearable."
- "I hope the judge or whoever is in charge now does the right thing before it's to late. If not, I won't be going down quietly. I've got a plan that will have the press, politicians, and the public all over the SSA disability bureau so they can overhaul this sinister process ...."

*Letter to State of Iowa Disability Determination Service*

- "This area of Region 7 will have to suffer the catastrophic consequences of the inept way you've handled this case."
- "If my vehicle brakes down or is confiscated I will be forced to take someone elses even a donut eater if necessary. I have no fear of those inferior saps."

■ "Under 18 U.S.C. § 115(a)(1)(B), the key is 'whether the defendant intentionally communicated the threat ... not that the threat was credible or could be immediately carried out.'" *United States v. Schiefen,* 139 F.3d 638, 639 (8th Cir. 1998) (citation omitted). Under Section 115(a)(1)(B), the issue of "[w]hether a particular statement may properly be considered to be a threat is governed by an objective standard—whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault." *Id.* (quotation omitted). To be convicted under 18 U.S.C. § 876, a reasonable recipient, familiar with the context of the communication must interpret it as a threat. *See United States v. Patrick,* 117 F.3d 375, 377 (8th Cir.1997).

■ While some of the statements now at issue are shocking standing alone, and some may appear to be threatening in the manner in which they have been presented to the Court, the true meaning of these statements can only be determined in context of the entire communication. *United States v. Bellrichard,* 994 F.2d 1318, 1321 (8th Cir.1993) (citing *Watts v. United States,* 394 U.S. 705, 708, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) ("When determining whether an alleged threat falls outside the realm of protected speech, it is important to focus on the context of the expression.")). The context is further illuminated by the entire circumstances under which the letter was sent, including such circumstances as were known to the recipients of the letters. *Martin v. United States,* 691 F.2d 1235, 1240 (8th Cir.1982) ("If a reasonable recipient, familiar with the context

of the communication, would interpret it as a threat, the issue should go to the jury"). More importantly, when statements are ambiguous or susceptible to two different interpretations, one threatening and one non-threatening, the government bears the burden beyond a reasonable doubt to remove the ambiguity. *United States v. Barcley,* 452 F.2d 930, 933 (8th Cir.1971).

█ Mr. Bell's statements, as presented to the Court at this time appear ambiguous. However, when the separate statements are read together, the Court finds the statements may be properly viewed as a threat. Defendant attempts to color his statements as attempts to convince the recipients of his letters that he is in fact mentally disabled and therefore qualified to resume benefits under the SSI disability benefits program. That interpretation may be supported in the context of the entire communication and the government will carry the burden at trial of proving a contrary interpretation beyond a reasonable doubt. However, the entire communication is not before the Court and the government has not had an opportunity to present evidence concerning the perceptions of the recipients of these letters who have knowledge of the context of the communications.

Defendant urges that it is appropriate for this Court to determine his First Amendment defense at this early stage of the proceedings, citing *United States v. McDermott,* 29 F.3d 404, 407 n. 3 (8th Cir.1994). Such a reading of the Eighth Circuit's holding in *McDermott* is, however, misplaced. There the government had argued that defendant had waived his constitutional right to appeal by failing to object to jury instructions. The Eighth Circuit merely held that the failure to object to the jury instructions was not a waiver in that case where the defendant had previously filed a motion to dismiss on First Amendment grounds. The *McDer-*

*mott* decision does not suggest that a pre-trial motion is an appropriate avenue to grant an acquittal on the claim that a particular defendant's First Amendment rights are violated.

On the contrary, when determining whether an ambiguous statement is in fact entitled to First Amendment protection, the indictment and submission of facts on a motion to dismiss are not adequate to allow the Court to assess the entire context of the communication. In a comparable case involving obscenity, the district court in the Northern District of Iowa held that a motion to dismiss was an inappropriate means of evaluating defendant's speech for First Amendment protection:

> The question whether a particular book or magazine is within the protection of the First Amendment requires a delicate constitutional judgment. This is not a judgment that can be made at a high level of abstraction. An independent evaluation must be made of the facts of each case. [citations omitted] The facts of an obscenity case cannot be adequately judged by a mere reading of the indictment supplemented by the defendants' informal offer of evidence.

*United States v. Luros,* 243 F.Supp. 160, 166 (N.D.Iowa 1965), *cert. denied, Luros v. Hanson,* 382 U.S. 956, 86 S.Ct. 433, 15 L.Ed.2d 361 (1965).

Therefore, defendant's motion to dismiss is denied.

IT IS SO ORDERED.