USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1760 UNITED STATES OF AMERICA, Appellee, v. JOSUE FUENTES-VAZQUEZ, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. Perez-Gimenez, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Coffin, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ____________________ Gabriel Hernandez Rivera for appellant. ________________________ Antonio R. Bazan, Assistant United States Attorney, with whom _________________ Guillermo Gil, United States Attorney, Jose A. Quiles-Espinosa, Senior _____________ _______________________ Litigation Counsel, Joseph J. Frattallone, Assistant United States ______________________ Attorney, were on brief for appellee. ____________________ April 28, 1995 ____________________ COFFIN, Senior Circuit Judge. Appellant Josue Fuentes ______________________ Vazquez claims that the district court erred in departing upward from the guidelines when it sentenced him for carjacking. Finding the departure both legally permissible and factually supportable, we affirm. I. Factual Background __________________ Some basic facts are not in dispute. On February 1, 1994, Fuentes and an accomplice attempted an ill-fated carjacking in a heavily congested commercial section of Isla Verde, Carolina, Puerto Rico. The targeted victim, Anselmo B. Marquez, turned out to be an FBI Agent. Fuentes pointed a semi-automatic pistol at Marquez as the agent disembarked from his car, and demanded and received his keys and wallet. A few moments later, Marquez drew his official pistol from his waist bag and fired twice at Fuentes, wounding him. Fuentes' accomplice, waiting in the car in which the pair had arrived at the scene, backed up toward Fuentes. Fuentes threw his gun into the car and attempted to get in through the passenger side window. He could not. The accomplice then left at high speed, initially dragging Fuentes alongside the car. After he fell to the pavement, Fuentes was detained by Marquez until local police officers arrived and took him to a hospital. The circumstances surrounding the shooting by Marquez are disputed. Fuentes maintains that, after obtaining Marquez's keys and wallet, he sensed that Marquez's behavior suggested police training, and so he decided to abort the robbery. He claims to -2- have been shot in the back while running toward the get-away car. Marquez contends that he fired his weapon at Fuentes while the defendant was leaning toward him in a half-crouch and pointing his gun at the agent. The government claims the shot hit Fuentes in the chest. Each version has some documentary support. The government points to a doctor's report from Puerto Rico Medical Center describing Fuentes' injury as "GSW [Gun Shot Wound] to chest." Another report from the hospital, however, includes a diagram explicitly labeling a spot on Fuentes' back as the "orefice of entrance" and a similar spot on his chest as the "orefice of exit." His "Discharge Summary" also states that he received a gunshot wound to his back. Fuentes pled guilty to a single count of carjacking under 18 U.S.C. 2119. In his presentence report, the probation department recommended against an adjustment in sentence for acceptance of responsibility in part because Fuentes had provided conflicting versions of the events of the crime. The report noted that he was claiming to be the sole participant in the carjacking and that he had been shot in the back by Marquez. In a separate section addressing factors that may warrant a departure from the applicable guidelines range, the report noted that the court could consider an upward departure because the offense conduct involved potential risk of harm to innocent bystanders. The report continued: The potential exchange of gunfire, the shots fired by the special agent in self-defense, and the acceleration -3- of the getaway car in a normally highly congested area could have had serious consequences. Although the guideline for the offense of conviction, in and of itself, has considered varying harms to the carjacking victim, the guideline provisions do not cover harm or potential injury to others in the course of committing the offense. In his response to the presentence report, Fuentes objected only to the acceptance of responsibility conclusion. His counsel explained in the response that there apparently had been a misunderstanding concerning Fuentes' statements to the probation officer regarding an accomplice: Fuentes actually had acknowledged that another person was involved but claimed that that individual remained in the car during the attempted carjacking. As for where Fuentes was shot, counsel submitted copies of the medical records previously described, and noted that they "clearly indicated that he was shot in the back." At the sentencing hearing, Fuentes' attorney reminded the court of the objection regarding acceptance of responsibility and urged the court to find that Fuentes had demonstrated "a genuine personal responsibility for his actions" based on a sworn statement that he had submitted recounting his version of the crime and on statements made to the probation officer. The court seemingly accepted the attorney's entreaty, responding with the following comment: All right, in essence that is a modification to the information contained in the pre-sentence report, but aside from that, any other changes as to the information contained in the pre-sentence report? The attorney expressed no further concerns, and the court went on to impose sentence. Beginning with a base offense level of 20, -4- see 2B3.1(a), the court added five levels for the specific ___ offense characteristic of brandishing a firearm and then deducted three levels for acceptance of responsibility. The resulting base offense level, 22, produced a guideline range of 41 to 51 months. The court then turned to consideration of an upward departure and, essentially adopting the language of the presentence report,1 added a two-level departure to increase the imprisonment range to 51 to 63 months. The court imposed the maximum. No objection was raised to the departure. On appeal, Fuentes claims that the departure was improper both legally and factually. He asserts that the risk of harm to others is commonplace in the crime of armed carjacking, and it is therefore inappropriate to add to the guidelines range on that basis. Additionally, Fuentes argues that Agent Marquez fired his weapon without cause -- since he, the perpetrator, was retreating  ____________________ 1 The court stated it would consider a departure on the basis that the offense conduct involv[ing] potential risk of harm to innocent by-standers such as pedestrians, patrons or drive-by motorist[s] during the commission of the instant offense, the potential exchange of gun fire, shots fired by a Special Agent in self defense and the acceleration of the getaway car within an area known for its high concentration of people, could have led to serious bodily injury or life threatening consequences to any individual. The Guideline for the offens[e of] conviction in and by itself has considered harm to the car jacking victim, the Guideline provisions do not cover harm or potential injury to others in the course of committing the offense, thus the Court imposes a 2 level departure enhancement . . . . -5- from the crime scene -- and Fuentes consequently should not be blamed for the risk to bystanders from the shooting. II. Discussion __________ We begin by noting the limited range of our review. Sentencing challenges, like other issues arising from criminal convictions, may not be raised for the first time on appeal. United States v. Dietz, 950 F.2d 50, 55 (1st Cir. 1991). An ______________ _____ unpreserved claim will be considered only in order to prevent a "miscarriage of justice." United States v. Agoro, 996 F.2d 1288, _____________ _____ 1291 (1st Cir. 1993). So far as we can tell from the record, the claim brought by Fuentes on appeal was never presented to the district court. As described above, his response to the presentence report and the colloquy at the sentencing hearing focused solely on his entitlement to the three-level adjustment for acceptance of responsibility. Although his appellate argument on departure implicates some of the same facts relevant to acceptance of responsibility -- most notably, the circumstances surrounding the shooting -- the court's attention was never directed to the problems Fuentes now ascribes to its decision to depart. Indeed, counsel may well have made a deliberate decision not to challenge the court's statement that Agent Marquez shot Fuentes in self- defense for fear that it would raise anew the acceptance of responsibility issue. Even with the two-level upward departure, Fuentes came out ahead with the three-level acceptance of responsibility adjustment. -6- In any event, the departure is supportable even under the standard applicable to fully preserved claims of error. Our typical review of departure decisions involves a three-step analysis: (1) whether the reasons the court gave for departing are of the sort that might permit a departure in an appropriate case; (2) whether the record supports a finding of facts demonstrating the existence of such reasons; and (3) whether, given the reasons, the degree of departure is reasonable. United States v. Mendez-Colon, 15 F.3d 188, 189 (1st Cir. 1994). _____________ ____________ The district court felt that a departure was appropriate because commission of an armed hijacking in a busy commercial area created an unusually high risk of harm to bystanders and nearby motorists. We agree that this is a permissible basis for departure. The robbery guideline, which is the one applicable to carjackings,2 provides for an increase in sentence based on actual injury only to the victim of the crime. See  ______ ___ 2B3.1(b)(3). In addition, the section of the guidelines discussing appropriate grounds for departure notes as an example that "because the robbery guideline does not deal with injury to more than one victim, departure would be warranted if several persons were injured." See 5K2.0 (Policy Statement). No ___ reference is made to possible innocent bystanders, and we therefore think it clear that the guideline itself does not take  ____________________ 2 This guideline was amended in 1993 explicitly to cover carjackings. See 2B3.1(b)(1)(B). ___ -7- into account harm to individuals other than the victim or victims. We also must consider whether creation of a risk to others, __________________ rather than causing them actual harm, is sufficient to warrant an increased sentence. Fuentes claims that such a risk is an ordinary feature of an armed carjacking, and that its presence therefore should not trigger a departure from the carefully calibrated guidelines punishments. This contention is contradicted, however, both by the applicable guideline's focus on the victim and by commentary in the Sentencing Guidelines on the relevance of the risk created in a criminal encounter. The Commentary to 1B1.3 states that when a specific guideline addresses only harm sustained, the risk created enters into the determination of the offense level only insofar as it is incorporated into the base offense level. . . . When not adequately taken into account by the applicable offense guideline, creation of a risk may provide a ground for imposing a sentence above the applicable guideline range. 1B1.3, comment. (n.5). The robbery guideline is cited as one that refers only to actual harm. Because we have concluded that the offense level does not contemplate impact on anyone other than the targeted carjacking ______ victims, the risk created to bystanders necessarily was not taken ____ into account in setting the punishment. We think it therefore within the trial court's authority to depart from the guidelines when the offense conduct creates a substantial risk to others, as when an armed carjacking is committed in a busy commercial area. -8- Having concluded that the reasons the court gave for departing are "of the sort that might permit a departure in an appropriate case," Mendez-Colon, 15 F.3d at 189, we next must ____________ consider whether such circumstances actually exist in this case. In explaining the decision to depart, the district court noted the "potential exchange of gun fire," the actual shots fired by the special agent "in self defense" and the acceleration of the getaway car "within an area known for its high concentration of people." Fuentes' challenge centers on the shooting: he claims that the danger to bystanders arose not from his conduct but from the agent's unjustified shooting as he, Fuentes, was retreating from the confrontation. As previously noted, a factual dispute exists concerning the circumstances surrounding the shooting. Although a court normally should make factual findings on contested matters related to sentencing, see Fed. R. Crim. P. 32 (C)(1), we are ___ untroubled here by the court's omission both because Fuentes failed to draw the issue to its attention and because the risk originated with Fuentes and his undisputed brandishing of a firearm. On the question of potential harm to others, it is of little moment whether Marquez was justified in shooting when he did. A defendant who attempts a carjacking in a heavily congested area while wielding a firearm has created a risk that innocent persons will be harmed by a precipitous act that triggers use of his or someone else's weapon. This, it seems to us, was the district court's primary concern. Whether a shooting -9- actually occurred, and how, are matters we think more relevant in reviewing the extent of the departure than in determining whether a departure is permissible at all. And, as for the degree of departure here, we think it was eminently reasonable. The court used as an analogy the guideline section providing for an increase of two levels if the defendant recklessly created a substantial risk of death or serious bodily injury to another person while in flight from a crime. See  ___ 3C1.2. Assuming that the court would have imposed the maximum term with or without the departure, the increase from the departure was therefore 12 months. We think this a judicious and supportable additional penalty.3 One additional aspect of this case makes its result even more clearly correct. Ironically, it appears that the two-level increase in base offense level achieved through the departure actually should have been imposed under a requirement of the guidelines overlooked by both the probation office and the court, and never addressed by the parties. In November 1993, three months before the incident at issue in this case, 2B3.1 -- the robbery guideline -- was amended to include specific reference to carjacking, a crime that had been added to the criminal code a year earlier. See generally United States v. Singleton, 16 F.3d ___ _________ _____________ _________ 1419, 1424-25 (5th Cir. 1994). Subsection (b) of 2B3.1 lists "specific offense characteristics" that trigger increases to the  ____________________ 3 Indeed, part of the court's rationale for the departure -- the risk created by the high-speed flight -- falls directly within 3C1.2. -10- base offense level of 20. The section as amended in 1993 states that if the offense at issue involved carjacking, the base offense level should be increased by two levels. 2B3.1(b)(1)(B). By departing upward, therefore, the district court simply achieved what should have been the proper baseline sentencing range. For the foregoing reasons, the judgment of the district ____________________________________________________________ court is affirmed.  _________________ -11-