USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT _________________________ No. 95-1900 UNITED STATES OF AMERICA, Appellee, v. JONATHAN FELDMAN, Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Nathaniel M. Gorton, U.S. District Judge] ___________________ _________________________ Before Selya, Stahl and Lynch, Circuit Judges. ______________ _________________________ Annemarie Hassett, Federal Defender Office, for appellant. _________________ Diane Cabo Freniere, Assistant United States Attorney, with ____________________ whom Donald K. Stern, United States Attorney, was on brief, for the United States. _________________________ April 26, 1996 _________________________ SELYA, Circuit Judge. Defendant-appellant Jonathan SELYA, Circuit Judge. ______________ Feldman pleaded guilty to a twelve-count indictment charging him with fraud and interstate transportation of stolen property. See ___ 18 U.S.C. 1341, 1343, 2314; 42 U.S.C. 408(a)(7)(B). The district court convened a disposition hearing on August 3, 1995. Using the version of the guidelines that was in effect on that date, see United States v. Harotunian, 920 F.2d 1040, 1041-42 ___ ______________ __________ (1st Cir. 1990), the court computed the guideline sentencing range (GSR) at 30-37 months and imposed a 33-month incarcerative sentence. Feldman now challenges the court's determination of the GSR and, ultimately, the sentence imposed. We affirm. I. OVERVIEW I. OVERVIEW We draw an overview of the facts necessary to shed light on this appeal from the Presentence Investigation Report (PSI Report) and the transcript of the disposition hearing. See ___ United States v. Dietz, 950 F.2d 50, 51 (1st Cir. 1991). _____________ _____ The defendant worked for Norman and Eleanor Rabb as a home attendant from May to October of 1993, assisting them with their personal care. The Rabbs were octogenarians. In addition, Mr. Rabb was in failing health and afflicted by a deteriorating mental condition. The couple could not handle their personal finances and a long-time retainer, herself seventy-eight years old, wrote checks to pay their household expenses. During the course of his employment, the defendant became privy to the Rabbs' finances. Having obtained Mr. Rabb's social security number and the account numbers for a Fidelity 2 Investments trust account and a Bank of Boston checking account, he set out to defraud the Rabbs upon leaving their employ. His modus operandi involved siphoning funds from both the trust and _____ ________ checking accounts by impersonating Mr. Rabb, forging negotiable instruments, and similar artifices. To cover his tracks, he submitted to the postal service change of address forms directing that all the Rabbs' business mail be forwarded to the address of his own dwelling. The defendant then retained the mail that would have revealed his skulduggery (such as the monthly trust account statements) and forwarded the remainder to the Rabbs to quell any suspicions. All told, the defendant pilfered $139,972.00 from the trust account and $59,423.68 from the checking account before his shenanigans were discovered. II. DISCUSSION II. DISCUSSION The defendant challenges two rulings made by the district court in constructing the GSR. We address these rulings seriatim. A. Obstruction of Justice. A. Obstruction of Justice. ______________________ Invoking U.S.S.G. 3C1.1,1 the district court increased the defendant's offense level for obstruction of justice. In requesting the two-level enhancement the government argued that the defendant burned bank statements and checks belonging to the Rabbs in his fireplace on October 13, 1994,  ____________________ 1This guideline directs a two-level increase "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. 3C1.1 (Nov. 1994). 3 after learning that the Federal Bureau of Investigation (FBI) had launched an investigation. The defendant admitted that he had destroyed documents after learning of the investigation. He nonetheless objected to the upward adjustment on the basis that he had not burned financial data but had only burned drafts of a will and letters of apology that he had written (though not mailed) to the Rabbs. The district court did not choose between these versions but stated in effect that, on either version, the enhancement applied. 1. Adequacy of Findings. The defendant asserts that 1. Adequacy of Findings. ____________________ the district court erred in leaving unresolved the factual controversy concerning what the flames consumed. We review a sentencing court's factual findings under section 3C1.1 for clear error, see United States v. Aymelek, 926 F.2d 64, 68 (1st Cir. ___ _____________ _______ 1991), but we afford plenary review to essentially legal determinations (such as whether section 3C1.1 includes a defendant's allegedly obstructive conduct within its scope), see ___ United States v. Emery, 991 F.2d 907, 910 (1st Cir. 1993). _____________ _____ When a defendant alleges that a PSI Report contains a factual inaccuracy, the district court ordinarily must either make a finding, up or down, as to the allegation, or else determine that no finding is necessary because the controverted matter will not be taken into consideration in connection with, or will not affect, the sentencing decision. See Fed. R. Crim. ___ P. 32(c)(1); see also U.S.S.G. 6A1.3 (Nov. 1994). Thus, the ___ ____ sentencing court need not resolve factual conflicts when doing so 4 will serve no useful purpose. See United States v. Fuentes- ___ _____________ ________ Vazquez, 52 F.3d 394, 397 (1st Cir. 1995); see also United States _______ ___ ____ _____________ v. Sepulveda, 15 F.3d 1161, 1199-1200 (1st Cir. 1993), cert. _________ _____ denied, 114 S. Ct. 2714 (1994). The instant case exemplifies the ______ point: the judge was not obliged to choose between the two conflicting accounts if under either version the documents constituted material evidence. We explain briefly. Given that the defendant knew of the ongoing FBI probe and nonetheless intentionally incinerated documents, the only question that remained was whether the documents in the pyre were material to the investigation. See United States v. St. Cyr, 977 ___ _____________ _______ F.2d 698, 705 (1st Cir. 1992) (explaining that a defendant's actions must impede the government's investigation in some material way to trigger an obstruction enhancement). The bank records that the government described plainly met the test for materiality. In the alternative, the government argued that even if the defendant had been toasting letters of apology, those letters would also be material and, hence, the defendant would still be guilty of an obstruction of justice within the contemplation of section 3C1.1. The record indicates that the lower court accepted this reasoning. The court stated: [T]he defendant burned certain material after he knew about the investigation that was in progress and that he did so in this Court's mind with an idea of preventing the Government from obtaining relevant material evidence. Three principles guide our review of this determination. First, the test for materiality under the 5 obstruction-of-justice guideline is not stringent. See United ___ ______ States v. Ovalle-Marquez, 36 F.3d 212, 226 (1st Cir. 1994), cert. ______ ______________ _____ denied, 115 S. Ct. 947, 1322 (1995); St. Cyr, 977 F.2d at 705. ______ _______ Second, a sentencing judge's finding of materiality is reviewed only for clear error. See United States v. Biyaga, 9 F.3d 204, ___ _____________ ______ 205 (1st Cir. 1993); United States v. Pineda, 981 F.2d 569, 574- _____________ ______ 75 (1st Cir. 1992). Third, the Sentencing Commission defines "material" evidence in this context as evidence that "would tend to influence or affect the issue under determination." U.S.S.G. 3C1.1, comment. (n.5) (Nov. 1994); see also United States v. ___ ____ ______________ Kelley, 76 F.3d 436, 441 (1st Cir. 1996). ______ These three principles counsel rejection of the defendant's assignment of error. The papers that the defendant burned were material if they could have influenced or affected the official investigation into his fraud. If those papers included the Rabbs' bank statements and checks (which the defendant had intercepted and which were never located), they were obviously material.2 If, however, the papers included the defendant's written apologia to the Rabbs, then they were also material. A letter of apology to the victims of a crime, even in draft form, is tantamount to a confession of guilt. Had this voluntary confession, in the defendant's handwriting, been uncovered in his home on that October afternoon, it would have had the potential to influence the investigation of the fraud.  ____________________ 2The defendant claims somewhat unconvincingly that he "lost" all the bank records and checks belonging to the Rabbs. 6 In this case, all roads lead to Rome. Regardless of which version of events the sentencing court believed, both entailed the destruction of material evidence in the face of a known investigation. Thus, we descry no clear error in the sentencing court's determination that the defendant's burning of evidence whether bank records or letters of apology warranted an upward adjustment under section 3C1.1. By the same token, the district court did not err in declining to spin the web more finely by making a particularized finding as to the exact nature of the documents that were burned. This conclusion likewise stills the defendant's cry that the district court abused its discretion when it failed to hold an evidentiary hearing to resolve the factual dispute concerning the nature of the burned documents. Because the defendant destroyed evidence material to the investigation on either version of the facts, the evidentiary hearing that he demanded would have amounted to an empty charade. A district court need not indeed, should not hold an evidentiary hearing when nothing will turn on it.3 2. Fifth Amendment. The defendant's backup argument 2. Fifth Amendment. _______________  ____________________ 3The defendant also contends that the district court erred in failing to make a factual finding that the defendant acted willfully and with specific intent to avoid responsibility for the fraud. This contention misperceives the record. Judge Gorton did make an explicit finding of specific intent, noting that the defendant's act of burning documents occurred "after he knew about the investigation that was in progress" and that the defendant had in mind "an idea of preventing the Government from obtaining relevant material evidence." We require no greater precision from a sentencing court. See United States v. ___ ______________ Gonzales, 12 F.3d 298, 299-300 (1st Cir. 1993). ________ 7 on obstruction of justice involves a strained interpretation of the constitutional right against compelled self-incrimination. He posits that the papers he burned were personal papers  letters of apology not prepared in the course of committing the offense, and he asseverates that it was his constitutional right to incinerate these personal papers in order to avoid incriminating himself. This argument misconstrues the protections that the Fifth Amendment offers. The law is clear that, though the Fifth Amendment protects against the compelled preparation of incriminating documents as well as the compelled production of private documents when the act of production itself is incriminating, the Amendment does not act as a general bar to the production of private information voluntarily prepared. See United States v. ___ _____________ Doe, 465 U.S. 605, 610-11 (1984); Fisher v. United States, 425 ___ ______ _____________ U.S. 391, 400-01 (1976). Once an individual chooses voluntarily to prepare a written account, the act of preparation serves as an effective waiver of the Fifth Amendment's protections. See Doe, ___ ___ 465 U.S. at 610-11. In other words, just as a defendant cannot begin to testify at trial and then change his mind, a suspect cannot create a testimonial communication embodying incriminating admissions and then choose to destroy it when he knows that it has become relevant to an ongoing criminal investigation. In this instance, the defendant concedes that he voluntarily prepared letters of apology, but he claims a privilege on the basis that the letters were private papers 8 unrelated to the commission of the crime. This point does not aid the defendant's quest. The Fifth Amendment does not deal with the privacy of the contents of documents, but, rather, with the voluntariness of their preparation and production. See Fisher, 425 U.S. at 401. ___ ______ This court has stated that if the privilege against self- incrimination applies at all to the contents of private papers, it does so "only in rare situations, where compelled disclosure would break the heart of our sense of privacy." In re Grand Jury ________________ Subpoena, 973 F.2d 45, 51 (1st Cir. 1992) (citations and internal ________ quotation marks omitted). The defendant's letters, as he describes them, do not fit this mold. The appellant goes one step further when he suggests that the privilege against self-incrimination includes the right to destroy voluntarily prepared documents. Otherwise, he maintains, any time a defendant authors personal notes that might aid an investigation, and later decides to eradicate them, the fact of destruction could be used to enhance his punishment. This may be so but the contention that such a rule violates the privilege against self-inculpation distorts the contours of the Fifth Amendment. There is simply no constitutional right to destroy evidence. The Supreme Court made the point bluntly in Segura v. ______ United States, 468 U.S. 796 (1984). There the Court stated that _____________ the very idea of such a right "defies both logic and common sense." Id. at 816; accord United States v. Corral-Corral, 899 ___ ______ _____________ _____________ 9 F.2d 927, 930 (10th Cir. 1990); Hancock v. Nelson, 363 F.2d 249, _______ ______ 254 (1st Cir. 1966), cert. denied, 386 U.S. 984 (1967). Though a _____ ______ person ordinarily may refuse to prepare or produce any evidence that is self-incriminating, see, e.g., Andresen v. Maryland, 427 ___ ____ ________ ________ U.S. 463, 475 (1976), that privilege in no way suggests that the person may take affirmative action to destroy evidence even evidence that he himself has created once he is aware that authorities are searching for it (or something like it). That act of affirmative misconduct, undertaken with the intent of hindering an extant investigation, is the paradigmatic example of an obstruction of justice. See U.S.S.G. 3C1.1, comment. ___ (n.3(d)) (Nov. 1994). Nor do the sentencing guidelines provide a special layer of swaddling. To be sure, the Sentencing Commission wrote that the enhancement for obstruction of justice "is not intended to punish a defendant for the exercise of a constitutional right." U.S.S.G. 3C1.1, comment. (n.1) (Nov. 1994). This reminder of Fifth Amendment safeguards simply means that the enhancement should not apply to a defendant who does no more than stand upon his rights, say, by maintaining his silence or refusing voluntarily to disclose evidence of his guilt. See ___ Thomas W. Hutchison & David Yellen, Federal Sentencing Law and ___________________________ Practice 3C1.1 author's comment 4 (1994). Affirmative ________ misconduct, however, is the intended target of the obstruction- of-justice enhancement, and, as such, increasing a defendant's sentence for affirmative misconduct does not trespass upon 10 protected terrain. In sum, the defendant's act of burning incriminating documents was not shielded by the Fifth Amendment even if those documents comprised personal papers that he himself created. Hence, the sentencing court did not err when it applied the section 3C1.1 enhancement in this case.4 B. Vulnerable Victims. B. Vulnerable Victims. __________________ Feldman's second assignment of error calumnizes the district court's imposition of a two-level upward adjustment attributable to the Rabbs' status as vulnerable victims.5  1. Generic Traits. The defendant's first sally  1. Generic Traits. _______________ which contends that the sentencing court applied the wrong legal standard because it based the enhancement on the Rabbs' membership in a generic class of elderly persons rather than on some individualized vulnerability that they might have possessed need not occupy us for long. We are in general agreement with the defendant's premise: in determining the propriety of an upward adjustment for vulnerability, the sentencing court's sights must be trained on the victim's individual  ____________________ 4At oral argument defense counsel suggested that the Fifth Amendment applied here because the letters were preliminary drafts rather than finished products. We do not consider that argument. It was not made below, it was not made in the briefs, and it was not developed at any time. It is, therefore, triply waived. 5The guidelines provide for a two-level upward adjustment when an offender "knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct." U.S.S.G. 3A1.1 (Nov. 1994). 11 characteristics. Thus, in order to warrant a finding of unusual vulnerability, there must be some evidence, above and beyond mere membership in a large class, that the victim possessed a special weakness that the defendant exploited. See United States v. ___ ______________ Smith, 930 F.2d 1450, 1455 (10th Cir.) (holding that advanced _____ age, without more, does not render a victim unusually vulnerable), cert. denied, 502 U.S. 879 (1991); see also United _____ ______ ___ ____ ______ States v. Rowe, 999 F.2d 14, 17 (1st Cir. 1993) (cautioning that ______ ____ courts cannot predicate a finding of unusual vulnerability on generalizations about large classes to which the victim belongs). Contrary to the defendant's importuning, the record reflects that the district court apprehended and applied the standard enunciated above. This conclusion is buttressed in two separate ways. First, at the sentencing hearing Judge Gorton explicitly found (a) that "the defendant knew that the victim, Norman Rabb, was elderly and that his mental faculties were _____________________________________ failing" (emphasis supplied), and (b) that the defendant _______ proceeded to exploit this condition. Second, the judge expressly adopted the factual findings contained in the PSI Report a document that made clear, inter alia, that Mr. Rabb was _____ ____ physically debilitated and that the Rabbs were unable to handle their personal finances. We have accepted such findings as long as the purport and intent of the sentencing court is clear. See ___ United States v. Savoie, 985 F.2d 612, 620 (1st Cir. 1993). ______________ ______ These adopted findings qualify under that test. To say more would be supererogatory. The record simply 12 does not bear out the claim that the sentencing court applied the enhancement only because the Rabbs were octogenarians or shared certain generic aspects of a class of elderly persons. 2. Targeting. The defendant also contends that the 2. Targeting. _________ sentencing court erred in applying section 3A1.1 because the government did not show that he targeted the Rabbs due to their particular vulnerability to the planned fraud. This argument prescinds from the Sentencing Commission's advisory (now revoked, but in effect on the date of Feldman's sentencing) that the adjustment here in question "applies to offenses where an unusually vulnerable victim is made a target of criminal activity by the defendant." U.S.S.G. 3A1.1, comment. (n.1) (Nov. 1994). The defendant maintains that, unless we are prepared to disregard Rowe's interpretation of the "target" language, the government ____ must demonstrate that the offender selected his victims because of some "special susceptibility." Rowe, 999 F.2d at 17. ____ A backward glance helps to place this asseveration into perspective. Application Note 1, in its pre-1995 form, proved to be controversial. In particular, the "target" language split the circuits on the issue of whether the government had to prove that the defendant was motivated by the victim's special vulnerability in order to lay a foundation for the upward adjustment, see, ___ e.g., United States v. Smith, 39 F.3d 119, 124 (6th Cir. 1994); ____ _____________ _____ United States v. Cree, 915 F.2d 352, 354 (8th Cir. 1990), or _____________ ____ whether the government merely had to show that the defendant targeted his victim with the knowledge (actual or constructive) 13 that the victim was unusually vulnerable, see, e.g., United ___ ____ ______ States v. O'Brien, 50 F.3d 751, 754-55 (9th Cir. 1995). Dictum ______ _______ in Rowe tended to edge this court toward the former view. See ____ ___ Rowe, 999 F.2d at 17. ____ We need not probe the point more deeply. For purposes of the case at hand, the dispute is academic; either way, the proof suffices. As for future cases, the Sentencing Commission has removed all reasonable doubt by amending the commentary to section 3A1.1. In an effort to resolve "some inconsistency in the application of 3A1.1 regarding whether this adjustment required proof that the defendant had `targeted the victim on account of the victim's vulnerability,'" U.S.S.G. App. C., Amend. 521, at 430 (Nov. 1995), the Commission deleted the "target" language. The revised note merely states that the vulnerable victim provision "applies to offenses involving an unusually vulnerable victim in which the defendant knows or should have known of the victim's unusual vulnerability." U.S.S.G. 3A1.1, comment. (n.2) (Nov. 1995). In future cases this provision, not our statements in Rowe, will govern. ____ Applying Rowe generously, i.e., assuming arguendo, ____ ________ favorably to Feldman, that targeting was an essential element of the government's proof, the defendant's argument founders. Rowe ____ merely requires that a special susceptibility have been a factor in the offender's process of selecting his prey. See id. at 16- ___ ___ 17 & n.3. This means that the government did not need to prove here that the defendant set out to defraud elderly, infirm 14 people, and targeted the Rabbs because they fit the bill. It also means that the government did not need to prove that the Rabbs' infirmities were the sole reason that the defendant zeroed in on them. Even under the Rowe regime, expansively construed, ____ the government had to show only that the defendant selected the Rabbs as his victims in part because they were elderly and infirm. See Cree, 915 F.2d at 354 (explaining that "enhancing a ___ ____ defendant's sentence based on victim vulnerability is justified only when a defendant's actions in some way exploited or took ___________ advantage of that vulnerability") (emphasis supplied). The record in this case contains more than enough evidence to justify a finding that the defendant targeted the Rabbs because of their vulnerability. After all, he entered the Rabbs' employ only because of their infirmity and, in his capacity as a home care assistant, he gained copious knowledge of their afflictions. Knowing of their diminished capacity, he obtained information necessary to carry out his plot. Given these and other facts, we believe that the record establishes a nexus between victims' susceptibility and victimizer's criminality adequate to establish targeting. See United States ___ _____________ v. Pavao, 948 F.2d 74, 78 (1st Cir. 1991). Thus, the district _____ court's finding that the defendant targeted his victims on account of their age and infirmity warrants our approbation. We need go no further. Here, the defendant selected his victims because he had been their personal caretaker and had discovered their vulnerabilities at first hand. The victims were 15 elderly, in failing health, and no longer in control of their finances. The defendant enacted his scheme with full knowledge that these vulnerabilities would make his crime easier to accomplish. Consequently, the district court did not clearly err in determining that the Rabbs were vulnerable victims within the scope of U.S.S.G. 3A1.1, and that the defendant had targeted them on that basis. Affirmed. Affirmed. ________ 16