# United States Court of Appeals
## For the First Circuit

No. 12-1135

UNITED STATES OF AMERICA,

Appellee,

v.

WILLIAM QUIRION,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Howard, Selya and Thompson,
Circuit Judges.

Richard L. Hartley and Law Office of Richard Hartley on brief
for appellant.
Margaret D. McGaughey, Assistant United States Attorney, and
Thomas E. Delahanty II, United States Attorney, on brief for
appellee.

April 30, 2013

**SELYA, <u>Circuit Judge</u>.** The district court found that the defendant had obstructed justice by lying to federal agents (and others) in order to protect his girlfriend. Using this finding as a fulcrum, the court applied a two-level sentencing enhancement. The enhancement contributed to a stiffer sentence, which the defendant now appeals.

While some may admire the defendant's misplaced gallantry, shading the truth in the course of a criminal investigation, whether or not under oath, is a matter of considerable consequence. Where, as here, the defendant's mendacity was material and significantly impeded the investigation and prosecution of his criminal conduct, a sentencing enhancement for obstruction of justice is a fitting response. Consequently, we uphold the imposition of the enhancement and affirm the resulting sentence.

We start with the travel of the case. On June 15, 2011, a federal grand jury sitting in the District of Maine returned a three-count indictment against defendant-appellant William Quirion and his girlfriend, Sherri Mancos. The indictment charged the defendant with possession of marijuana with intent to distribute (count 1) and possession of a firearm by a convicted felon (count

-2-

2).[1]  After some preliminary skirmishing not relevant here, the defendant pleaded guilty to both counts without any plea agreement.

In due course, the district court convened the disposition hearing.  After taking testimony, the court made a series of findings.  It set the base offense level at 14, see USSG §2K2.1(a)(6)(A), and then applied three enhancements, see id. §2K2.1(b)(1)(A) (offense involving three or more firearms); id. §2K2.1(b)(6)(B) (possession of firearms in connection with another felony offense); id. §3C1.1 (obstruction of justice).  Pairing the adjusted offense level (22) with the defendant's criminal history category (V) yielded a guideline sentencing range of 77-96 months. The court proceeded to impose an 80-month term of immurement.  This timely appeal followed.

The sole issue on appeal is whether the sentencing court erred in applying the two-level enhancement for obstruction of justice.  To impose such an enhancement, a sentencing court must supportably find that "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction."  Id. §3C1.1. "[M]aking false statements, not under oath, to law enforcement

---

[1] Count 1 charged a violation of 21 U.S.C. § 841(a)(1).  Count 2 charged a violation of 18 U.S.C. § 922(g)(1).  Count 3 was directed exclusively at Mancos.  Because count 3 has no bearing on this appeal, we do not elaborate upon it.

officers," without more, will not trigger the enhancement.  Id. §3C1.1, comment. (n.5(B)).  The enhancement is triggered, however, if a defendant "provid[ed] a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense."  Id. §3C1.1, comment. (n.4(G)).

The government has the burden of proving an obstruction of justice by a preponderance of the evidence.  United States v. Rodriguez, 336 F.3d 67, 71 (1st Cir. 2003); United States v. Aymelek, 926 F.2d 64, 67-68 (1st Cir. 1991).  We review for clear error the sentencing court's factbound determination that an obstruction of justice occurred.  Rodriguez, 336 F.3d at 71.  In undertaking this review, we are mindful that a sentencing court may base its determination on any evidence that it reasonably deems reliable.  See United States v. Gates, 709 F.3d 58, 70 (1st Cir. 2013); United States v. Cintrón-Echautegui, 604 F.3d 1, 6 (1st Cir. 2010).  We will set aside such a determination only if a review of the record leaves us "with the definite and firm conviction that a mistake has been committed."  United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).

In the case at hand, the lower court found that the defendant obstructed justice by making materially false statements to law enforcement officers (and others), which statements significantly impeded the government's ongoing investigation and

-4-

later prosecution of the defendant's criminal conduct. To put this finding into perspective, we must rehearse the relevant facts.

The record reflects that on February 25, 2010, federal agents investigating a marijuana distribution operation executed a search warrant at a residence shared by the defendant and Mancos in Caribou, Maine. The search turned up 4.9 kilograms of marijuana, drug paraphernalia, and four firearms. The firearms included a Winchester Model 94 .30-30 rifle, a New England Firearms Pardner Model SB1 .410 single-shot shotgun, and a CBC imported by FIE Miami FL 20-gauge single-shot Model SB41Y shotgun (the long guns). The fourth firearm was a Davis Industries Model D-32 .32 Auto Chrome Derringer handgun.

The agents arrested the defendant on the spot. They interviewed him on three occasions. We summarize the pertinent portions of those interviews.

The first interview took place at the time of the search. This audience focused on the marijuana trafficking, and the defendant admitted his participation in that enterprise.

The agents conducted the second interview in July of 2010. On that occasion, the defendant made unsolicited statements about the long guns.[2] Among other things, he declared that he had

---

[2] The controversy in this case centers on the provenance of the long guns. Mancos admitted to her ownership of the handgun, and the district court's obstruction of justice finding does not implicate that weapon.

inherited the three long guns after his father's death some years earlier. Following a string of burglaries, he retrieved the inherited firearms from his mother's house.

The third interview took place a month later. The defendant reiterated that he had inherited the long guns from his father. He added that, after taking physical possession of them, he kept them at a friend's home near Monson Pond; he brought them home, however, roughly a month before his arrest because of burglaries in the Monson Pond neighborhood.

We fast-forward from the three interviews to the change-of-plea hearing, held on August 18, 2011. During the plea colloquy, the defendant affirmed that he had inherited the long guns from his father.

The defendant's story, relatively straightforward to this point, changed dramatically after he received and reviewed the presentence investigation report (the PSI Report). In his objections to the PSI Report, the defendant asserted for the first time that he had gotten the three long guns not through inheritance but, rather, in a pawn transaction that took place in 2009. He admitted that this account contradicted the statements that he had repeatedly made to the agents during the serial interviews. He explained that he had concocted the apocryphal tale about a fictitious inheritance because he did not want to implicate the person who had pawned the guns.

Further details began to emerge. In connection with defense counsel's preparation of a sentencing memorandum, a defense investigator (Henry Dusenbery) spoke with the defendant. The defendant told Dusenbery that, in late 2009, the guns were pawned by one Dennis Daly. In the pawn transaction, he allegedly received the three long guns as collateral for a $300 loan.

Dusenbery attempted to confirm this account. He spoke with the defendant's sister, who verified that the defendant did not inherit the long guns. Dusenbery also interviewed Daly, who acknowledged that he had given two of the long guns <u>to Mancos</u> as collateral for a loan.

At the disposition hearing, the district court heard testimony from various witnesses, including Dusenbery and Daly. Dusenbery testified as to what his investigation had disclosed. Daly testified that he had given Mancos two guns (the .30-30 Winchester and the .410 single-shot shotgun) as collateral for a $250 loan.[3] Daly gave these guns to Mancos at the residence that she shared with the defendant. Daly made it pellucid that the pawn transaction was between him and Mancos, but he could not recall whether the defendant was present when he transferred the collateral.

---

[3] The record is murky both as to whether the loan to Daly was for $250 or $300 and as to whether two or three guns were pawned. The district court sensibly concluded that it was unnecessary to resolve these uncertainties.

-7-

At the conclusion of the evidentiary presentation, the district court, lauding Daly's credibility, accepted his version of the pawn transaction. The court further found that the defendant "told the government agents twice and erroneously in the summer of 2010 that those were guns that he received from his deceased father, and that was a flat-out lie." The court noted that the defendant misled Dusenbery as well, mischaracterizing the pawn transaction in an apparent attempt to protect Mancos. The court concluded that the defendant "has, from the outset of this investigation, deliberately and continually attempted to mislead the investigation as to the true facts involving the pawning of those guns" and that the defendant's mendacity significantly impaired the government's investigation and prosecution of the case. The court therefore found him "liable for obstruction of justice."

Credibility determinations made at sentencing are peculiarly within the province of the district court and will rarely be disturbed on appeal. See United States v. St. Cyr, 977 F.2d 698, 706 (1st Cir. 1992). This principle is the starting point for our appraisal of the district court's findings.

The defendant concedes — as he must — that he made materially false statements to federal agents during the interviews conducted in the summer of 2010. He argues, however, that whatever

false statements he made to Dusenbery were not material.  He is wrong.

In the context of the obstruction of justice enhancement, material information is "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination."  USSG §3C1.1, comment. (n.6).  As we have explained, "the test for materiality under the obstruction-of-justice guideline is not stringent."  United States v. Feldman, 83 F.3d 9, 13 (1st Cir. 1996).  Where, as here, a sentencing court makes a finding of materiality, that finding is reviewable only for clear error.  Id.

The defendant contends that his false statements to Dusenbery were immaterial to his prosecution because they were designed to protect Mancos and, thus, were material only to her prosecution, not his.  This contention fails for three reasons.

First, the long guns were the centerpiece of count 2 of the indictment; consequently, statements anent the defendant's possession of those firearms were material to the prosecution of the offense.  See USSG §3C1.1, comment. (n.6).  Second, the timing of the defendant's receipt of the long guns was material as to whether he possessed the firearms while serving a term of probation — a determination that affected the calculation of his criminal history category.  See id. §4A1.1(d).  Third, the defendant's veracity (or lack thereof) about when and how he acquired the

-9-

firearms was material with respect to acceptance of responsibility. See id. §3E1.1, comment. (n.1(A)).

The short of it is that because the defendant's statements to Dusenbery tended to affect his prosecution and sentencing, the district court's finding of materiality was not clearly erroneous. See, e.g., United States v. Restrepo, 53 F.3d 396, 397 (1st Cir. 1995) (per curiam).

The defendant's position with respect to his materially false statements to federal agents is more nuanced. He asseverates that these unsworn statements could not have worked an obstruction of justice because they were made prior to the commencement of a criminal prosecution and later corrected. In his view, therefore, the false statements could not have significantly impeded the government's investigation. This asseveration is untenable.

We conclude, as did the court below, that the materially false statements made to federal agents significantly impeded the investigation, prosecution, and sentencing of the defendant. After all, those false statements were folded into both the factual basis for the defendant's guilty plea and the initial PSI Report. They led, in turn, to a need to amend the PSI Report, a presentence conference with the court, the expenditure of government funds to conduct further investigation, and an evidentiary hearing to resolve contested sentencing issues. These were costly and time-consuming events that would not have been required but for the

defendant's persistent prevarication.  Hence, the district court did not err in finding an obstruction of justice.  <u>See</u> USSG §3C1.1, comment. (n.4(G)); <u>see</u> <u>also</u> <u>United States</u> v. <u>Thomas</u>, 86 F.3d 263, 263-64 (1st Cir. 1996) (per curiam).

We need go no further.  Sir Walter Scott wrote, long ago, about the "tangled web we weave, when first we practise to deceive."  W. Scott, Marmion, canto 6, stanza 17 (1808).  The web woven by the defendant's lies concerning the provenance of the long guns plainly obstructed justice, and the district court acted appropriately in applying the challenged enhancement.  <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Grigsby</u>, 692 F.3d 778, 785-90 (7th Cir. 2012); <u>St. Cyr</u>, 977 F.2d at 706.

**Affirmed.**