USCA1 Opinion

 

 August 18, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1959 UNITED STATES, Appellee, v. RICHARD L. ROWE, Defendant, Appellant. ____________________ ERRATA SHEET The opinion of this Court issued on July 22, 1993, is amended as follows: On page 2, footnote 1, lines 4-5, replace "29 U.S.C. 1131;" with "29 U.S.C. 1023, 1024, and 1131;". July 30, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _____ No. 92-1959 UNITED STATES, Appellee, v. RICHARD L. ROWE, Defendant, Appellant. ___________ ERRATA SHEET The opinion of this Court issued on July 22, 1993, is amended as follows: On page 4, line 7 from the bottom: strike "Fed. R. Civ. P. 52(a)." On page 4, last line: change "q" in "quideline" to "g" UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 92-1959 UNITED STATES, Appellee, v. RICHARD L. ROWE, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Susan E. Silver with whom Jack F. St. Clair and Joseph, St. Clair _______________ __________________ _________________ & Cava were on brief for appellant. ______ Victor A. Wild, Assistant United States Attorney, with whom A. _______________ __ John Pappalardo was on brief for appellee. _______________ ____________________ July 22, 1993 ____________________ BOUDIN, Circuit Judge. Pursuant to a plea agreement, ______________ Richard Rowe pled guilty to numerous criminal charges stemming from his role in a fraudulent health insurance scheme whose victims were a number of small businesses and their employees.1 Rowe developed and administered a multi- employer health insurance plan which offered below-market rates for coverage comparable to that provided by other insurance companies, and which was falsely represented as being a tax-exempt ERISA plan "approved" by the United States Department of Labor. Rowe and others involved in the scheme mismanaged the operation and converted plan assets and, as a result, many subscribers to the plan were left with unpaid medical bills. Rowe was sentenced to an aggregate six-year term of imprisonment, to three years of supervised release, and ordered to pay up to $1,903,386 in restitution. He now appeals, challenging the following sentencing calculations: a two-level increase in his base offense level for victim vulnerability, U.S.S.G. 3A1.1; a two-level increase for obstruction of justice, U.S.S.G. 3C1.1; and a one-level ____________________ 1Rowe pled guilty to all counts against him which included conspiracy, 18 U.S.C. 371; mail fraud, 18 U.S.C. 1341; ERISA theft, 18 U.S.C. 664; ERISA false statements, 18 U.S.C. 1027; failure to file certain ERISA statements, 29 U.S.C. 1023, 1024, 1131; and ERISA kickback, 18 U.S.C. 1954. ERISA is the acronym for the Employment Retirement Income Security Act of 1974, 29 U.S.C. 1001 et seq. ______ -2- -2- upward departure for causing the loss of confidence in an important institution, U.S.S.G. 2F1.1, application note 10(e). We set aside the enhancement for victim vulnerability and otherwise affirm. Victim Vulnerability. Section 3A1.1 of the Sentencing ____________________ Guidelines directs the sentencing court to increase a defendant's base offense level by two levels: If the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct . . . . The commentary to the guideline states that the adjustment applies "where an unusually vulnerable victim is made a target of criminal activity by the defendant." U.S.S.G. 3A1.1, application note 1. The commentary further explains that an adjustment for victim vulnerability is warranted where, for example, a defendant fraudulently markets an ineffective cancer cure or targets a handicapped person for robbery, but not where a fraud is aimed at the general public and "one of the victims happened to be senile." Id. __ The government made two arguments in the district court in support of the enhancement. First, it said that small businesses such as those solicited by Rowe are unable to obtain affordable health insurance for their employees, making them particularly susceptible to offers of low-cost health insurance. Second, the government argued that -3- -3- individual employees were rendered vulnerable once they developed medical problems because they then faced the choice of either continuing their payments to Rowe's plan, despite its nonpayment or delayed payment of their medical bills, or else possibly losing their health insurance. Rowe contends that the district court erred in accepting these arguments as a basis for imposing an enhancement under section 3A1.1. He says that the district court should have required the government to produce evidence that the employers and employees were in fact unusually vulnerable instead of taking _______ the government's assertions at face value. We agree. In our view, it may be fair to assume as a matter of reasonable inference that a number of the small businesses to whom the insurance was sold were motivated by need as well as by the prospect of savings. It is even more likely that those subscribers who were already ill when the plan faltered would be inclined to remain longer with the plan for lack of alternatives. The district court in sentencing matters is not restricted to formal evidence, and the court's factual inferences, as well as direct findings, are normally set aside only if "clearly erroneous." See 9 Wright & Miller, ___ Federal Practice and Procedure 2573, at 689, 2587 (1971 & ______________________________ 1993 Supp.). Nevertheless, we think as a matter of interpretation of the guideline, cf. United States v. Sabatino, 943 F.2d 94, __ _____________ ________ -4- -4- 102 (1st Cir. 1991), that the enhancement does not apply in this case. In construing this guideline, the circuit courts have been rather quick to reverse enhancements based on the victims' class membership, without a showing of individual circumstances; and, in addition, the case law has emphasized the need for "unusual[]" vulnerability and "particular[]" susceptibility. U.S.S.G. 3A1.1.2 In Wilson, the court ______ reversed the enhancement for one who fraudulently solicited for "relief" funds in a town stricken by a tornado, saying: [I]f we were to adopt the government's position, virtually every defendant convicted of a crime involving fraudulent solicitation would be subject to an upward adjustment under 3A1.1. Those who engage in this criminal activity usually target their solicitations at those they think most likely to respond to the requests for money. We do not think, however, that the Sentencing Commission intended on that account to impose an upward adjustment on virtually all defendants convicted of fraudulent solicitation. 913 F.2d at 138. We think that even if we accept the government's assumption that small businesses are often limited in their sources for securing insurance, this does not itself show that measure of "unusual" or "peculiar" vulnerability or susceptibility of victims needed to invoke the guideline. ____________________ 2See, e.g., Sabatino, 943 F.2d at 103; United States v. _________ ________ _____________ Paige, 923 F.2d 112, 113-114 (8th Cir. 1991); United States _____ ______________ v. Creech, 913 F.2d 780, 781-82 (10th Cir. 1990); United ______ ______ States v. Wilson, 913 F.2d 136, 138 (4th Cir. 1990). Compare ______ ______ _______ United States v. Pavao, 948 F.2d 74, 78 (1st Cir. 1991) ______________ _____ (enhancement upheld where district court heard evidence of drug user's actual vulnerability to crime). -5- -5- Apart from directing his offers to the group "most likely to respond," Wilson, 913 F.2d at 138, there is nothing in the ______ record to suggest that Rowe focused special attention on precariously placed victims--conduct evincing the "extra measure of criminal depravity which 3A1.1 intends to more severely punish." United States v. Moree, 897 F.2d 1329, _____________ _____ 1335 (5th Cir. 1990). We do not say that under the guideline special vulnerability may never be derived from class membership; as the commentary states, "market[ing] an ineffective cancer cure" would qualify for enhancement. U.S.S.G. 3A1.1, application note 1. But where there is only an ordinary measure of increased likeliness to respond in the solicited group, and no evidence that the defendant selected individual victims based on special susceptibility, we think the enhancement does not apply. It is hard to articulate a more precise standard where so much turns on degree. The emerging case law will pick out the pattern. As for the individual employees who later developed medical conditions, we agree with the government that it is probably safe to assume that these individuals had more than the usual incentive to continue paying their premiums. There may well be among this group some who were especially stricken and unusually vulnerable, just as there may have been some small businesses truly desperate to obtain -6- -6- insurance. Although individuals who became ill after the insurance was sold were hardly a special target of Rowe's initial solicitations, it may be that their subsequent inability to switch plans contributed in some manner to his profits. But in this case the thrust of the wrongdoing with which Rowe was charged was the initial fraudulent solicitations and the mismanagement or looting of the plan's assets. The near certainty that some of the subscribers would be more enmeshed than others appears to have been a collateral aspect of the wrongdoing. Indeed, the situation is rather close to the case in which a fraud is aimed at the general public and some of the victims are senile or otherwise unusually susceptible. Yet in that instance the guideline commentary expressly precludes an enhancement, U.S.S.G. 3A1.1, application note 1, presumably because there is no special targeting of such victims and the added impact is incidental. We think the same result follows in this case.3 Obstruction of Justice. Rowe's guilty plea encompassed ______________________ related charges that were brought in Atlanta and Boston and that were later consolidated. After Rowe's arrest in Boston ____________________ 3At oral argument before this court, the government implied that Rowe's company told individual subscribers with medical problems that they had no choice, given their existing conditions, other than to stay with its plan despite late payment of their claims. However, no evidence to this effect was presented to the district court. -7- -7- on January 23, 1990, he was released on bond on the condition, among others, that he appear for all judicial proceedings as required. Two days later Rowe was arraigned in the Atlanta case in the Northern District of Georgia. Shortly thereafter Rowe fled the country, and a warrant for his arrest was issued on April 13, 1990. Rowe was arrested in Denmark by Danish authorities on June 16, 1990, and returned the next month to Atlanta where he remained in federal custody without bail. While Rowe was out of the country, the district court in Georgia heard motions in the case in Rowe's absence. Rowe's action in fleeing the country resulted in a two-level enhancement for obstruction of justice, U.S.S.G. 3C1.1, which Rowe now appeals. The government argues that Rowe has waived any objection to the enhancement for obstruction of justice because his written objection to the enhancement as proposed in the presentence report was not repeated at the sentencing hearing. At the outset of the hearing, the district judge asked Rowe's counsel whether he had any "additions or corrections" to make to the presentence report, which incorporated an enhancement for obstruction of justice. Rowe's lawyer replied that the only correction concerned Rowe's assets and liabilities, and the discussion then turned to the defendant's assets and to other issues. -8- -8- Notably, the government, when asked the same question, said that it had no additions or corrections to make, even though it had filed its own written objections to the presentence report. When the district court then inquired into one of those objections, the prosecutor told the judge that he had "understood the Court to be asking whether there were any additional matters the government wanted to submit __________ to the Court as opposed to argue to the Court." Rowe's lawyer might have reached the same conclusion since the matter of Rowe's assets was a newly-raised issue. We need not pursue the matter because the enhancement was appropriate. Rowe argues that the obstruction enhancement does not apply to flights from arrest that do not endanger others. U.S.S.G. 3C1.1, application note 4(d), and 3C1.2. This is a generally correct statement of the law but an erroneous description of the reason for Rowe's enhancement. Rowe received the enhancement for his failure to appear for judicial proceedings. This was made clear in the presentence report. The commentary to the obstruction guideline in effect at the time of Rowe's sentencing provides for a two- point increase for a defendant's "willfully failing to appear, as ordered, for a judicial proceeding." U.S.S.G. 3C1.1, application note 3(e) (1990). -9- -9- Although this commentary was not in effect when Rowe fled to Denmark, no ex post facto problem is presented. The _____________ 1989 version of the guidelines were in effect when Rowe disappeared in early 1990. The courts have uniformly held that flight from judicial proceedings constitutes an obstruction of justice under the 1989 version of the Guidelines. United States v. Monroe, 990 F.2d 1370, 1375 _____________ ______ (D.C. Cir. 1993) (canvassing cases); United States v. ______________ McCarthy, 961 F.2d 972, 979-80 (1st Cir. 1992). ________ Rowe's only response to the actual basis for the enhancement is that he was unaware of probation proceedings to obtain his passport. It was during these proceedings that authorities learned of Rowe's absence from the country. In his response to the presentence report, Rowe explained that he had already left for Denmark when the probation office began its efforts to secure his passport. However, as Rowe's counsel conceded at oral argument in this court, one of the conditions of Rowe's release was that he turn over his passport. The obvious purpose of the requirement was to prevent Rowe from avoiding prosecution by leaving the country. We find no error in the district court's decision to enhance Rowe's sentence for obstruction of justice. Loss of Confidence in an Important Institution. We also ______________________________________________ affirm the district court's decision to depart upward one level for loss of confidence in an important institution. -10- -10- The commentary to the fraud guideline says that an upward departure may be warranted if the amount of the loss involved does not fully capture the harm or seriousness of the conduct, and then gives several examples of when a departure may be appropriate. U.S.S.G. 2F1.1, application note 10. One of the examples is where "the offense caused a loss of confidence in an important institution." Id., application ___ note 10(e). In its presentence memorandum, the government cited articles and congressional testimony describing the growing threat to the health insurance industry, and in particular to multi-employer arrangements for small businesses, caused by fraudulent operators posing as legitimate insurers. Rowe argues that there was no evidence that his own conduct occasioned a loss of confidence in the health industry. In our view no such evidence was required. We think it obvious that the many businesses and employees defrauded by Rowe must have had their confidence in health insurers shaken as a result of their experience. It cannot be seriously doubted that they and others made aware of the scheme are now likely to be more wary of insurers, and especially of legitimate but relatively unknown insurers who cater to small businesses. The district court did not need to hear evidence to reach this conclusion. See United States ___ _____________ v. Fousek, 912 F.2d 979, 981 (8th Cir. 1990) (evidence not ______ -11- -11- necessary to show that bankruptcy trustee's embezzlement of funds caused a loss of confidence in the institution of bankruptcy trustees). We conclude that the vulnerability enhancement cannot stand but that the other challenges to the sentence fail. The sentence is vacated and the case is remanded for re- _______ ________ sentencing consistent with this opinion. It is so ordered. ________________ -12- -12-