UNITED STATES of America, Appellee,

v.

Charles Henry GILL, Jr., Defendant,
Appellant.

No. 96–1203.

United States Court of Appeals,
First Circuit.

Heard July 29, 1996.

Decided Nov. 6, 1996.

Terry A. Fralich with whom Peter J. De-Troy, and Norman, Hanson & DeTroy, Portland, ME, were on briefs, for defendant, appellant.

Helene Kazanjian, Assistant United States Attorney, Portland, ME, with whom Jay P. McCloskey, United States Attorney, Bangor, ME, was on brief, for the United States.

Before TORRUELLA, Chief Judge,
BOUDIN, Circuit Judge, and LISI,* District Judge.

BOUDIN, Circuit Judge.

Charles Gill appeals from his sentence, following a plea of guilty to various criminal charges, to challenge two sentencing determinations made by the district judge. One involves the issue of the vulnerable victim adjustment, U.S.S.G. § 3A1.1(b); the other, an increase for abuse of a position of trust. *Id.* § 3B1.3. The facts, which we briefly summarize, are drawn from the presentence report, the sentencing transcript and various other materials before the district court. *United States v. Egemonye,* 62 F.3d 425, 426 (1st Cir.1995).

From August 1993 until November 1994, Gill owned and operated the Maine Health Trust, doing business as The Counseling Center, in Fryberg, Maine, and provided psychological counseling services to individuals at the Counseling Center during this period. Additionally, from February 1994 to November 1994, Gill was employed part-time at the Bethel Area Health Center in Bethel, Maine, where he performed similar counseling services.

Gill told individual patients at the two facilities, and his employers at the Bethel Area Health Center, that he possessed a doctoral degree in psychology and was licensed as a psychologist or counselor under Maine law. In fact, Gill was not licensed and had never received an advanced degree in either psychology or counseling. Gill had a substantial record of offenses involving theft and passing bad checks.

During the period in question, Gill submitted claims, or caused patients and the Bethel Area Health Center to submit claims for payment to various private insurance companies and the Medicare and Medicaid programs for services that Gill provided to them. The total value of the payments claimed from these entities was over $37,000. Gill also made similar false statements as to his credentials and licensing to the insurance companies and to Medicare and Medicaid authorities. Gill received payments totalling over $16,000 directly from individual patients.

In March 1995, Gill pled guilty to one count of willfully using a passport secured by means of a false statement, 18 U.S.C. § 1542, Gill having proffered the passport when the Bethel Area Health Center requested proof of his citizenship at the start of his employment. In October 1995, Gill pled guilty to one count of mail fraud, one count of wire fraud, and one count of making false statements to the Medicare and Medicaid programs. 18 U.S.C. §§ 1341, 1343; 42 U.S.C. § 1320. All charges were consolidated for sentencing.

Following a hearing on January 30, 1996, the district court sentenced Gill to 40 months' imprisonment, three years supervised release, and a requirement of restitution in the amount of $43,481.49. The underlying calculations included a two-level increase in Gill's base offense level for victim vulnerability, U.S.S.G. § 3A1.1(b), and a two-level increase for abuse of a position of trust, *id.* § 3B1.3. It is these two adjustments that are the sole subjects of Gill's appeal from his sentence. Gill was sentenced under the November 1995 edition of the guidelines, and references are to that version unless otherwise specified.

■ The standard of review in such a case is simple, in fact deceptively so, in the standard formulation: the district court's factual findings are respected unless clearly erroneous, and the determinations of law are reviewed *de novo. United States v. Sabatino,* 943 F.2d 94, 102 (1st Cir.1991). In principle, the application of a legal standard to undisputed facts is also an issue of law, *id.,* but in practice the matter is not quite so clear-cut.

* Of the District of Rhode Island, sitting by designation.

■ *Victim vulnerability.* Since November 1, 1989, the provision now designated U.S.S.G. § 3A1.1(b) has remained substantially unchanged, although a recent change in the commentary is pertinent to the issue of "targeting" (discussed below). The black letter of section 3A1.1(b) states that a two-level increase in the defendant's offense level must be imposed:

> [i]f the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct.

The presentence report proposed that the adjustment be applied to Gill. As amended to reflect rulings on objections, the report reasoned that Gill knew that the patients with whom he would be dealing "had psychological difficulties, mental health disorders and substance abuse problems." Accordingly, the probation officer said that Gill knew that his victims were vulnerable and "specifically targeted them because of their 'vulnerability' by [choosing] to play the part of a person who treats such people with mental health problems."

At sentencing, the district court concluded that the victims "were especially vulnerable because of their needs that gave rise to their seeking and their receiving of services." The court cited decisions in other circuits imposing such an adjustment on individuals fraudulently providing medical services. *See United States v. Echevarria*, 33 F.3d 175, 180–81 (2d Cir.1994) (unlicensed doctor); *United States v. Bachynsky*, 949 F.2d 722, 735–36 (5th Cir.1991) (physician making false diagnoses), *cert. denied*, 506 U.S. 850, 113 S.Ct. 150, 121 L.Ed.2d 101 (1992).

■ Gill disputes the district court's adjustment on several grounds. He argues that the finding of vulnerability must be based on evidence as to individuals, rather than upon mere membership in a class. He denies that the patients he victimized were especially vulnerable. Finally, he says that he did not "target" the victims on account of their vulnerability, a requirement he imputes to the guideline based on commentary language. The first two claims are related; the

last we discuss separately in the next section of this opinion.

■ The vulnerable victim guideline is primarily concerned with the impaired capacity of the victim to detect or prevent the crime, rather than with the quantity of harm suffered by the victim. The latter aggravation is dealt with in five *other* provisions of the guidelines, expressly permitting upward departures where the crime resulted in death, significant physical injury, extreme psychological injury, special property damage, or the gratuitous infliction of injury or prolonging of pain or humiliation. U.S.S.G. §§ 5K2.1, .2, .3, .5, .8. As *United States v. Kaye*, 23 F.3d 50, 54 (2d Cir.1994), explained:

> [T]he courts appear to have interpreted the phrase "susceptible to the criminal conduct" as emphasizing that a particular victim was less likely to thwart the crime, rather than more likely to suffer harm if the crime is successful.

Thus, the issue here is whether the patients at the two mental health facilities where Gill practiced were, on account of their condition, substantially less able than the average citizen to protect themselves against Gill's fraud. There is nothing in the presentence report or in the district judge's comments that suggests a misunderstanding on this point. However, we stress the focus of the guideline at the outset because one cannot measure degrees of vulnerability or susceptibility without some notion of what *kind* of vulnerability or susceptibility is at issue.

Even thus narrowed, our case is peculiarly difficult because Gill was dealing with a *group*, made up of individuals about whom we know almost nothing beyond the fact that they fall into a class of persons, namely, those who visit mental health centers for counseling and therefore are likely to have or think they have some emotional or mental problem—which may afflict the patient *or* a related non-patient. Gill argues that in such a case it is improper for a vulnerability finding to be based on membership in a class rather than on evidence as to a specific individual.

Appeals courts have been rather more willing to set aside determinations of vulnerabili-

ty made solely on a class basis than when the focus was on the susceptibility of a specific individual. *United States v. Rowe*, 999 F.2d 14, 16–17 (1st Cir.1993). But, as we also said in *Rowe*, this is in no way a fixed rule. *Id.* at 17. In some cases the inference to be drawn from the class characteristics may be so powerful that there can be little doubt about unusual vulnerability of class members within the meaning of section 3A1.1.

The guideline makes clear that "class" determinations are permissible by saying in its commentary that the adjustment would apply to someone who sold an ineffective cancer cure. U.S.S.G. § 3A1.1(b), comment. n. 2. Numerous cases have upheld upward adjustments based on group determinations. *See, e.g., United States v. Malone*, 78 F.3d 518, 522–23 (11th Cir.1996) (cab drivers); *Echevarria*, 33 F.3d at 180–181 (medical patients); *United States v. McDermott*, 29 F.3d 404, 411 (8th Cir.1994) (black teenagers); *United States v. Peters*, 962 F.2d 1410, 1417–18 (9th Cir.1992) (people with poor credit histories); *Bachynsky*, 949 F.2d at 735 (medical patients).

In *Rowe*, the primary subjects of the fraud were business entities, and, without knowing more about any company, it was hard for us to see how they were "unusually" vulnerable to fraud. The more recent case of *United States v. Feldman*, 83 F.3d 9 (1st Cir.1996), also relied upon by Gill, is quite different. There, this court was concerned with a crime directed against only one or two specific victims. *Id.* at 15–16. To resort to a single, class-based characteristic in such a case is to prefer the less complete picture to a more complete one readily available.

Yet even in a one-victim case, a single "class" characteristic could be so powerful a proof of vulnerability as to settle the issue without more. Indeed, the guideline commentary suggests it would be enough to show that an armed robbery victim was confined to a wheelchair. U.S.S.G. § 3A1.1(b), comment. n. 2. In truth, many inferences about an individual rest on an implicit generalization

about a class. Everything depends on the strength of the inference.

In our own case, the government could have simplified matters if it had offered evidence from some of Gill's former patients as to their own conditions. At the same time, concerns about privacy and privilege make it pretty obvious why the prosecutor might wish to avoid this course—quite apart from considerations of time and expense. In all events, the government was free to rest upon the inference that many such patients would be highly vulnerable, leaving it to the sentencing judge to agree or disagree.

In our view, a sentencing judge could reasonably conclude based on general knowledge that, in the typical situation, at least a fair number of patients at a community mental health center are commonly under significant emotional stress. True, some patients might be free of stress, but to suppose this to be generally true is unrealistic. Counseling in mental health matters often involves disclosing affairs that most people treat as private and, if for no other reason, it is a step that many are likely to take only to cope with substantial strains.

The records revealed that Gill had treated many patients and that a number of them had multiple visits. It is thus safe to infer that at least some of these victims were under significant stress and so unusually vulnerable to Gill's fraud. It seems to us evident that Gill could foresee the risk sufficiently to meet the guideline's "knew or should have known" standard. *Id.* § 3A1.1(b). *See United States v. Skillman*, 922 F.2d 1370, 1378 (9th Cir.1990), *cert. denied*, 502 U.S. 922, 112 S.Ct. 353, 116 L.Ed.2d 275 (1991).[1]

Ours would be a different case if Gill had seen only one patient and we knew nothing about that individual. Yet a different problem would be presented if Gill had accepted the general inference as to most clinics but offered evidence that *his* clinic treated only persons with a special problem unlikely to involve much patient stress. But neither of

---

1. This contrasts with the situation, described by the guideline commentary, in which one of many victims happens to be vulnerable by some circumstance accidental in relation to the fraud and largely unforeseen. U.S.S.G. § 3A1.1(b), comment. n. 2 (enhancement not applicable to purveyor of fraudulent securities to general public if one victim happens to be senile).

these variations is presented, and there will be time enough to deal with them, and many other variations, as cases arise.

■ *Targeting.* Gill makes a separate complaint that his section 3A1.1 enhancement was erroneously applied because he did not "target" or select his victims because of their unusual vulnerability. He cites several cases for the proposition that this motivation is a additional requisite element. Until November 1995, the commentary to section 3A1.1 stated that the section was applicable "where an unusually vulnerable victim is made a target of criminal activity by the defendant." U.S.S.G. § 3A1.1, comment. n. 1 (Nov.1994).

This commentary language was deleted by the Sentencing Commission in November 1995 to "clarif[y] the operation" of section 3A1.1. U.S.S.G.App.C, Amend. 521, at 430 (Nov.1995). But Gill's criminal conduct took place prior to the amendment date. So, if the 1995 amendment did away with a previously required element of targeting motivation, the prior guideline might have to be followed under *ex post facto* principles. *See* U.S.S.G. § 1B1.11; *United States v. Prezioso,* 989 F.2d 52, 53–54 (1st Cir.1993).

Gill's argument about targeting leans heavily on our opinion in *Rowe.* The *Rowe* case involved a scheme to sell fraudulent health insurance policies to various small businesses, that were not, in our opinion, shown to be unusually vulnerable under section 3A1.1. *Rowe,* 999 F.2d at 16–17. When the government said that some of the employee-patients might have been unusually vulnerable—because once insured they could not easily switch companies—we replied that there was no "special targeting [by Rowe] of such victims." *Id.* at 17.

The confusion is understandable, and wholly of our own making, but it does not help Gill. All that we meant was that the case might have been different if the Rowe's fraud had involved direct dealings between Rowe and the employee-patients whereby the success of his scheme had depended upon the latter's vulnerability. *See, e.g., Bachynsky,* 949 F.2d at 735 (upholding enhancement against physician who submitted false claims to insurers after seeing vulnerable patients). In short, the reference to targeting in *Rowe* had nothing to do with laying down a separate and additional requirement that the primary subject of the fraud be a "target," as well as foreseeably vulnerable to an unusual degree.

Although the circuits are divided,[2] such an additional requirement of "targeting," even under the pre-amendment guideline, is at odds with the evident purpose of the guideline: to punish more severely conduct that is morally more culpable and to protect such victims by adding more deterrence. *See, e.g., United States v. Brunson,* 54 F.3d 673, 676 (10th Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 397, 133 L.Ed.2d 317 (1995); *United States v. Morrill,* 984 F.2d 1136, 1137–38 (11th Cir.1993). Further, to require subjective motivation undermines the guideline's own lesser scienter requirement, namely, that the defendant "knew or should have known" of the victim's unusual vulnerability.

In the present case, the main subjects of Gill's fraud include both the patients with whom he dealt directly and those third parties who were billed, such as insurance companies. It is a reasonable, indeed compelling, inference that the former include at least some who were unusually vulnerable and were foreseeably so. That is enough under the guideline, pre and post amendment, regardless of Gill's own private motivation. If *Rowe* has confused matters, as apparently it has, we are happy to set the record straight.

■ *Abuse of Position of Trust.* Gill also argues that the district court erred in enhancing his sentence under U.S.S.G. § 3B1.3. That section provides for a two-level enhancement "if the defendant abused a position of public or private trust ... in a manner that significantly facilitated the commission or concealment of the offense."

**2.** *Compare United States v. O'Brien,* 50 F.3d 751, 755–56 (9th Cir.1995) (declining to impose a scienter requirement of targeting beyond the "knew or should have known" standard) *with United States v. Holmes,* 60 F.3d 1134, 1136 (4th Cir.1995) (discussing additional targeting requirement), *and United States v. Smith,* 39 F.3d 119, 124 (6th Cir.1994) (adopting targeting requirement).

U.S.S.G. § 3B1.3. Thus, the district court must first decide that the defendant occupied a position of trust and then find that he used that position to facilitate or conceal the offense. *See United States v. Santiago-Gonzalez,* 66 F.3d 3, 8 (1st Cir.1995).

Here the district court concluded that, at least "in real life terms," Gill occupied a position of trust relative to his counseling patients, and that Gill took advantage of the patients' reliance on his claimed status as a psychologist to further his fraud scheme. Gill challenges both findings, claiming that he did not hold a position of trust as intended by the guideline, and that there was no evidence that he abused his position.

Were Gill a duly licensed psychologist who used his status as a mental health professional to perpetrate some fraud or other crime upon his patients and their insurers, there is no doubt that section 3B1.3's enhancement would apply. "Effective psychotherapy ... depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears." *Jaffee v. Redmond,* —— U.S. ——, ——, 116 S.Ct. 1923, 1928, 135 L.Ed.2d 337 (1996). The guideline phrase "private trust" readily describes the relationship of a psychologist vis a vis his or her patients.

Gill argues that because he did not *legitimately* occupy the position of counselor, he did not "hold" that position under section 3B1.3. This argument has persuaded at least one other circuit. In *Echevarria,* 33 F.3d at 181, the Second Circuit reversed a section 3B1.3 enhancement on a defendant who falsely held himself out as a physician, stating that "[w]e do not believe that an imposter 'holds' the position that he purports to occupy within the meaning of this commentary." It does not persuade us.

We appreciate that read literally, the guideline could be taken to refer only to one who legally or legitimately occupied a position of trust, presumably the usual case. But the threat that animates the guideline may as easily be present where the position is occupied by an imposter. That threat—illustrated by the lawyer who bilks a client out of trust funds or the doctor who sexually abuses a patient—is that wrongdoer's position facilitates the crime, reduces the chance of detection, or both. *See* U.S.S.G. § 3B1.3, comment. n. 1.

The threat is equally present whether the lawyer or doctor is fully licensed or is a pretender sporting a vest or white coat and displaying a fake diploma. In both cases, the wrongdoer is using the ostensible position to facilitate or conceal the crime, just as Gill's extraction of payments was facilitated by his claim to be a licensed counselor. Our own cases have stressed the practical realities rather than legal title in applying this adjustment.[3] This is also the view of the Tenth Circuit in *United States v. Queen,* 4 F.3d 925, 929–30 (10th Cir.1993).

The district court here found that Gill did acquire, "in real life terms ... by virtue of his conduct" a position of trust relative to his patients. "Trust" alone, of course, is not enough; there must also be a "position." But by pretending, Gill effectively occupied the "position" so far as the present guideline is concerned.

*Affirmed.*

---

3.  *See United States v. Newman,* 49 F.3d 1, 9 (1st Cir.1995) (section 3B1.3 enhancement upheld against a defendant who defrauded a corporation that was under his actual control, despite the fact that he had never properly obtained legal authority over the corporation); *cf. United States v. Innamorati,* 996 F.2d 456, 489–90 (1st Cir.) (*former* registry police officer subject to enhancement if prior position facilitated crime), *cert. denied,* 510 U.S. 955, 114 S.Ct. 409, 126 L.Ed.2d 356 (1993).