**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 23 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

      v.

WILMA FAY COFFMAN,

      Defendant - Appellant.

No. 97-5219

(N.D. Oklahoma)

(D.C. No. 96-CR-38-1-B)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **KELLY**, and **HENRY**, Circuit Judges.

Wilma Fay Coffman appeals her sentence, challenging the district court's

imposition of a two-level increase in the offense level under § 3A1.1(b) of the

United States Sentence Guidelines (USSG) and its determination of the amount

of the intended loss under USSG § 2F1.1   After examining the briefs and

appellate record, this panel has determined unanimously that oral argument would

---

[*]    This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

1

not assist the determination of this appeal.  See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9.  We order the case submitted without oral argument, exercise jurisdiction under 28 U.S.C. § 1291, and affirm.

BACKGROUND

Ms. Coffman pleaded guilty to one count of telemarketing fraud in violation of 18 U.S.C. §§ 2(b) and 1341.  According to the indictment, between May and August 1995, Ms. Coffman operated a fraudulent telemarketing business in Tulsa, Oklahoma known as "National Fundraisers Organization" and "National Finders Corp."[1]  As part of the fraudulent scheme, Ms. Coffman and her associates made telephone calls to individuals whom they knew or had reason to believe had lost money through other fraudulent telemarketing schemes.  The indictment alleged that Ms. Coffman and her associates made one or more of the following false representations: (1) that NFO was in the business of recovering money for the victims of telemarketing fraud; (2) that NFO could quickly recover these funds upon the payment of a fee; (3) that NFO would send the victims the money that they had lost if they would first send NFO a fee between $100 and $5,000; (4) that NFO was in the fundraising business and that the money it received would be used to benefit a children's charity; (5) that the victim had

---

[1]        We refer to these entities collectively as "NFO."

2

won a sum of money but had to pay a fee to NFO before he or she could receive it  See Rec. vol. I, doc. 1, at 2.

The presentence report concluded that Ms. Coffman had engaged in similar telemarketing schemes in Louisiana and Mississippi.  Ms. Coffman objected to several sections of the report, and, after conducting an evidentiary hearing, the district court sentenced her to a term of sixty months' imprisonment.  The court ordered Ms. Coffman's sentence to run concurrently with a Mississippi state court sentence for operating a similarly fraudulent telemarketing scheme.

Ms. Coffman then appealed her sentence. This court affirmed the district court's decision in part and remanded the case for resentencing, concluding that the district court had failed to make the required written findings on Ms Coffman's objections to the presentencing report.  See United States v. Coffman, No. 96-5245, 1997 WL 616070 (10th Cir. Oct. 7, 1997).

On remand, the district court issued written findings on Ms. Coffmans's objections.  See Rec. vol. I, doc. 32.  It then reimposed the sixty-month sentence and again concluded that Ms. Coffman's Mississippi sentence should be credited against the federal sentence.

Ms. Coffman now challenges the district court's reimposition of the sixty-month sentence on two grounds.  First, she argues that the district court erred in imposing a two-level increase in the offense level pursuant to USSG § 3A1.1(b)

because it did not make particularized findings that individual victims were "unusually vulnerable" or "particularly susceptible" to her fraudulent telemarketing scheme. Second, she maintains that the district court erred in concluding that the amount of intended loss from Ms. Coffman's fraudulent scheme exceeded $800,000 such that an eleven-point increase in the offense level was warranted under USSG § 2F1.1(b)(1)(2).

## DISCUSSION

We review the district court's factual findings underlying a sentencing determination for clear error. United States v. Hardesty, 105 F.3d 558, 559 (10th Cir. 1997). A district court's interpretation of Guideline provisions raises a legal question that we review de novo. United States v. Frazier, 53 F.3d 1105, 1111 (10th Cir. 1995).

### Absence of Findings of Vulnerability and Susceptibility of Individual Victims

Ms. Coffman first argues that the district court erred in applying § 3A1.1(b), which provides for a two-level upward adjustment in the offense level "[i]f the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition or that a victim was otherwise particularly susceptible to the criminal conduct." USSG § 3A1.1(b).

4

According to Ms. Coffman, the district court erred in considering the victims as a group rather than assessing their vulnerability and susceptibility individually.

In United States v. Lee, 973 F.2d 832, 834 (10th Cir. 1992), this circuit concluded that § 3A1.1(b) requires "that the sentencing court make particularized findings of vulnerability." We held that an enhancement could not be based solely on "the victims' membership in the class of 'elderly persons.'" Id. In that context, we also stated that "[w]ithout more, class membership cannot support a two point enhancement under section 3A1.1." Id.

In a subsequent decision, however, we acknowledged that there are some instances in which the victims, as a class, possess certain characteristics such that "there can be little doubt about the unusual vulnerability of class members within the meaning of section 3A1.1." United States v. Tissnolthtos, 115 F.3d 759, 762 (10th Cir. 1997) (quoting United States v. Gill, 99 F.3d 484, 487 (1st Cir. 1997)). That observation is supported by the commentary accompanying § 3A1.1 and by the decisions of other circuits.

In particular, as the Fifth Circuit has noted, the commentary to § 3A1.1 states that the vulnerable victim enhancement would apply "'in a fraud case where the defendant marketed an ineffective cancer cure.'" United States v. Brown, 7 F.3d 1158, 1161 (5th Cir. 1993) (quoting USSG § 3A1.1 cmt.1.) This example does not require that "any individual victim purchasing such a cure must

5

be unusually vulnerable beyond the fact that he has cancer and is seeking a cure." Brown, 7 F.3d at 1161 n. 3. The commentary "deem[s] cancer patients, as a group, to be unusually vulnerable *vis a vis* the general public to snake oil salesmen promising cancer cures." Id.

Other circuits have applied similar reasoning, concluding that certain groups may be particularly vulnerable or susceptible to criminal conduct. See generally Gill, 99 F.3d at 487 (noting that "[n]umerous cases have upheld upward adjustments [under § 3A1.1] based on group determinations"). For example, in United States v. Page, 69 F.3d 482, 489 (11th Cir. 1995), the court concluded, without discussing their individual circumstances, that victims with bad credit or otherwise "in a precarious financial situation" were unusually vulnerable to a fraudulent loan scheme. Similarly, in United States v. O'Brien, 50 F.3d 751, 756 (9th Cir. 1995), the court upheld a class-wide determination that individuals with serious medical problems who had difficulties obtaining insurance were particularly vulnerable to insurance fraud. In Gill, the court held that a sentencing judge could reasonably conclude that, as a group, "patients at a community mental health center are commonly under significant emotional stress" such that they constituted vulnerable victims under § 3A1.1. Gill, 99 F.3d at 487; see also United States v. Holmes, 60 F.3d 1134, 1137 (4th Cir. 1995) ("It is manifest that persons with poor credit ratings who have been turned down

6

elsewhere for loans would be unusually vulnerable, that is. more prone than most to yield to the melodious beseeching of a charlatan who assures them that their dreams are within their grasp.").

In the instant case, a review of the district court's findings on remand indicates that although it did not discuss the vulnerability or susceptibility of individual victims, it did explain why the victims, as a group, were unusually vulnerable and particularly susceptible to the fraudulent scheme:

> The Probation Officer was advised by [two of the codefendants] that [Ms.Coffman] sought out and purchased lists of previous telemarketing victims to solicit funds for the operation of her fraudulent scheme. [Ms. Coffman] stated to her employees that the listed victims were "easy money" because they had all previously been victimized by telemarketing fraud and [that] the telephone solicitor's job should be easier when manipulating the previous victim to send money.
> Under USSG § 3A1.1, [Ms. Coffman] knew or should have known that the subject victim was otherwise particularly susceptible to criminal conduct. Additionally, part of the telemarketing fraud conducted by [Ms. Coffman] involved offering past telemarketing victims recovery of past losses, of which they had been victimized, for a fee. [Ms. Coffman] chose these particular victims because they were usually receptive and vulnerable to the fraud scheme[,] as they were eager to recover their losses.

Rec. vol. I, doc., 32 at 6-7 (District Court Order filed November 14, 1997).

In our view, the victims in the instant case resemble those in Page, O'Brien, Gill, and similar cases. As in those cases, the record establishes that because of a common experience (i.e. having lost money to an entity managed by Ms. Coffman and her associates) a group of victims shared the same vulnerability

7

and susceptibility. Ms. Coffman exploited that vulnerability and susceptibility by promising the victims that she would recover their money for them. In light of the victims' shared vulnerability and susceptibility, which facilitated the fraudulent telemarketing scheme, the district court did not err in imposing the two-level upward adjustment without making findings of vulnerability as to each individual victim.[2]

## B. Amount of Loss

Ms. Coffman also argues that the district court erred in imposing an eleven-point upward adjustment in the offense level because the intended loss of

---

[2] Ms. Coffman also suggests that the district court should have required the government to prove that she made unusually vulnerable victims a "target" of her fraudulent scheme. Her argument is based on pre-November 1995 commentary to § 3A1.1, which stated that the vulnerable victim adjustment "applies to offenses where an unusually vulnerable victim is made a target of criminal activity by the defendant." U.S.S.G. § 3A1.1 cmt.1 (1994). That commentary was deleted in November 1995. See United States v. Hardesty, 105 F.3d 558, 560-61 (10th Cir. 1997).

In our view, this commentary to § 3A1.1 is not applicable here. Commentary to the Guidelines is not authoritative if it is "inconsistent with the guideline which it seeks to explain or is a plainly erroneous reading of the guideline itself." Id. at 560. This circuit has concluded that the pre-1995 commentary regarding the targeting of vulnerable victims is "at odds" with § 3A1.1 and should not be applied. Id. In any event, even if the targeting language were applicable to this case, the evidence presented by the government regarding Ms. Coffman's selection of victims who had previously lost money in telemarketing schemes establishes that she made vulnerable and susceptible victims a target of her criminal conduct.

her fraudulent telemarketing scheme exceeded $800,000. We review the district court's factual determination of the amount of loss for clear error. United States v. Fox, 999 F.2d 483, 485 (10th Cir. 1993).

In determining the amount of intended loss, the district court relied on evidence as to fraudulent telemarketing schemes operated by Ms. Coffman in Louisiana and Mississippi. The court cited testimony given by a probation officer at sentencing regarding Ms. Coffman's Louisiana scheme. The probation officer reported that Louisiana law enforcement officials had told him that "at least 941 victims were defrauded of $890,229.13 by [Ms. Coffman's] operation." Rec. vol. I, doc. 32, at 3. The probation officer also stated that Ms. Coffman had defrauded victims in Mississippi of an additional $94,399.04. In addition, according to the probation officer, one of Ms. Coffman's codefendants estimated that her fraudulent schemes caused several hundred victims to lose at least $1,000,000. See id. at 5. Another codefendant estimated those losses to be at least $1,500,000. See id.

In this appeal, Ms. Coffman argues that the district court should have based its decision on the evidence that she presented that the intended loss from her schemes was much less than $800,000. We are not persuaded. Although the evidence was conflicting, it was not clearly erroneous for the district court to rely on the probation officer's testimony about the amount of the intended loss rather

9

than on the evidence offered by Ms. Coffman.

CONCLUSION

Accordingly, for the reasons set forth above, the decision of the district court is affirmed.

ENTERED FOR THE COURT

Robert Henry
Circuit Judge