# United States Court of Appeals
## For the First Circuit

No. 06-1224

UNITED STATES OF AMERICA,

Appellee,

v.

DUNG CAO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Boudin, Chief Judge,
Selya, Circuit Judge,
and Schwarzer,[*] Senior District Judge.

Peter E. Rodway with whom Rodway & Horodyski, P.A. was on brief for appellant.
Margaret D. McGaughey, Appellate Chief, with whom Paula D. Silsby, United States Attorney, was on brief for appellee.

December 15, 2006

---

[*]Of the Northern District of California, sitting by designation.

**BOUDIN, Chief Judge.** In spring 2003 the Drug Enforcement Administration ("DEA") began an investigation of drug dealing in Portland, Maine. Evidence pointed to a drug operation led by Dung Le and Dung Vu which brought cocaine from Massachusetts for local distribution. In due course, the DEA identified Dung Cao, the appellant in this case, as one of a number of lesser figures who carried drugs as part of the conspiracy and facilitated sales.

Notably, in mid-July 2004, Cao was living at Le's residence and made several trips to Massachusetts to purchase cocaine for delivery to Maine. Extensive evidence showed that, during 2004, he transported money for drug transactions and that he regularly arranged and made deliveries. Some evidence was secured from surveillance and from individuals; but a substantial amount of the evidence was secured through wiretaps.

In December 2004, Cao was indicted with others for drug offenses. The main count against Cao was conspiracy to possess with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846 (2000); Cao was also charged with two counts of distributing crack cocaine. Id. §§ 841(a)(1), (b)(1)(C). In a trial of Cao alone in August 2005, he was convicted on all counts and was later sentenced to 168 months in prison.

On this appeal, Cao makes no claim that the evidence, which included admissions by Cao, was insufficient. Instead, he

argues that wiretap evidence should have been suppressed, that certain recorded calls were wrongly excluded, and that the court erred as to one of the instructions.  He also claims that errors occurred in the course of sentencing.  We address these arguments in order, the standard of review varying with the issue.

Under the governing wiretap statute, 18 U.S.C. §§ 2510-2521 (2000), an application must be made to a judge, including a "full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  Id. § 2518(1)(c).  If the application fails to satisfy this "necessity" showing but is nevertheless granted, the wiretap must be suppressed.  See United States v. Lopez, 300 F.3d 46, 52 (1st Cir. 2002).

In this case, the lead DEA agent filed a 28-page affidavit describing the investigation, assistance provided by confidential sources, drug transactions, and information secured through arrests and other means.  The application also described efforts by targets to avoid detection and it listed various alternative avenues (e.g., informants, further surveillance, grand jury), explaining why in this case they would not be likely to be fruitful.

The judge who granted the application made the required necessity finding.  18 U.S.C. § 2518(1)(c).  Prior to trial, the

trial judge held a hearing on co-defendant motions to suppress wiretaps at which the lead agent testified; and Cao supplemented his own request by asking for a Franks hearing. See Franks v. Delaware, 438 U.S. 154, 155-56, 171-72 (1978). In a subsequent ruling, the district court denied Cao's motion to suppress as well as his request for a Franks hearing. United States v. Le, 377 F. Supp. 2d 245, 261-66 (D. Me. 2005).

Cao's attack on the necessity finding rests on the lead agent's description of the successes of the investigation prior to the wiretap application. Such successes included the identification of key members of the conspiracy, use of confidential informants, evidence of specific sales, information about sources of supply, the arrest of important members of the conspiracy and related accomplishments. Thus, Cao says, how can there have been necessity for wiretaps?

The affidavit in support of the wiretaps made clear that although the investigation had secured much information through conventional means, some of the sources of supply and some of the other participants had not been identified; and, partly because of the precautions (e.g., avoiding surveillance, changing of phone numbers) taken by conspirators, the wiretaps remained essential. The affidavit also explained why changed conditions made the confidential informants of little use in further investigations.

-4-

Plainly the partial success of the investigation did not mean that there was nothing more to be done. Cao says that the arrest of Dung Le (one of the co-heads of the conspiracy) and her subsequent agreement to cooperate should have been enough to reveal the other participants and sources of supply; but the affidavit explained that her cooperation was short-lived and demonstrated that she had resumed drug-trafficking activities. The necessity finding is adequately supported. See United States v. Villarman-Oviedo, 325 F.3d 1, 10 (1st Cir. 2003).

Cao's claim to a Franks hearing fares no better. A Franks hearing is customarily ordered where the defendant makes a preliminary showing that the affidavit contains knowing or reckless material falsities or omissions; such a falsity or omission may compromise the adequacy of the affidavit. Franks, 438 U.S. at 155-56, 171-72; United States v. Paradis, 802 F.2d 553, 558 (1st Cir. 1986). Cao says that the affidavit did not reveal the full number of confidential sources or of drug transactions--matters material to necessity.

The trial judge found that the additional confidential sources alleged by Cao were described in the affidavit, see Le, 377 F. Supp. 2d at 263, and we reach the same conclusion. As for confidential informants, the affidavit refers to three; a later reference by the agent to a fourth was adequately explained: that person had played only a small role and was no longer available

-5-

when the wiretap application was made.  The <u>Franks</u> hearing was unnecessary.[1]

Cao also contests the district court's decision not to admit two recorded calls.  In one of the calls, call number 2009, Dung Le expressed concern to co-conspirator Yem Le that Cao was using drugs, adding that "[t]here's money there to be had, and he doesn't want to do that."  The other call, call number 4191, is summarized as "a conversation between Dung Le and Dung Vu, the relevant portion of which is Dung Le telling Dung Vu that Dung Cao is an informant and that she learned that from Dung Cao himself."

The district judge excluded the calls as hearsay and rejected claims that the statements were admissible for state of mind, as statements against interest, or under the residual exception or the doctrine of completeness. Extensive discussion of these interesting issues is unnecessary; neither call could conceivably have altered the outcome of the case and, if exclusion was error, such an error was harmless by any applicable standard.

That Cao was using drugs was arguably pertinent to his defense that he was a user so incapacitated as to be unable to conspire; but his substantial drug use was amply demonstrated by

---

[1]Cao's additional claim that he was entitled to further cross-examination following the submission of an affidavit supplementing the agent's testimony is without merit.  The exercise of good judgment by the trial judge is what counts in situations like this, <u>see</u> <u>United States</u> v. <u>Carty</u>, 993 F.2d 1005, 1009-10 (1st Cir. 1993); and every indication here is that further cross-examination of the agent would have been pointless.

other evidence and the summary statement by Dung Le added nothing. Further, the evidence that Cao had been substantially involved in the conspiracy over many months, proved by co-conspirator witnesses and recorded calls, was overwhelming.

The reference to Cao as an informant was pertinent to Cao's further defense that he was cooperating with the authorities and acting on their behalf--a matter we address next as bearing on the instructions. However, Cao's more specific description of his purported role as an informant was presented through his own testimony and that of the Maine drug enforcement agents with whom Cao claimed to be cooperating. Dung Le's suspicion of the role, or Cao's summary admission, added nothing of importance.

Cao next says that the district court erred in refusing to instruct the jury on the public authority defense. The defense applies where the conduct of the defendant was undertaken at the behest of a government official with the power to authorize the action (e.g., a controlled drug buy at the behest of a DEA agent) and the defendant reasonably relied on the authorization. United States v. Baptista-Rodriguez, 17 F.3d 1354, 1368 n.18 (11th Cir. 1994).

A defendant is entitled to an instruction on a relevant defense, but only if the evidence would permit a jury to accept the defense. United States v. Gamache, 156 F.3d 1, 9 (1st Cir. 1988). In making this judgment, the judge must draw reasonable inferences

and assume credibility issues in favor of the defense; but the defendant, who ordinarily bears the burden of proving an affirmative defense, must point to the evidence from which a rational jury could find the defense to be proved. United States v. Rodriguez, 858 F.2d 809, 812 (1st Cir. 1988).

In this case, the evidence showed that in October 2004, during the drug conspiracy, Cao was arrested in a domestic violence dispute with Dung Le and, on being released, contacted the Maine drug enforcement authorities and offered to provide information. Agent Webster, whom the defense called at Cao's federal trial in 2005, testified that he told Cao to call him if Cao had useful information about large-scale drug trafficking.

Webster testified, however, that he never authorized Cao to engage in drug transactions and Cao conceded that the agents did no more than ask to be called if Cao learned of something big. This effectively dooms Cao's request for a public authority instruction. Whether or not Webster had authority to use Cao to make buys (he said he did not because of Cao's arrest), Webster did not authorize any of the acts that constituted Cao's crimes.

It is remotely possible that Cao himself engaged in certain transactions in order to have something with which to tempt Webster into using him; but the details need not be recounted because the public authority defense does not allow self-authorized crimes in the hope of being useful. See generally United States v.

<u>Hilton</u>, No. 97-78-P-C, 2000 WL 894679, at *4 (D. Me. June 30, 2000), <u>aff'd</u>, 257 F.3d 50, 56 (1st Cir. 2001). It is worth adding that Cao's involvement in the conspiracy began well before he had any contact with Webster.

Finally, we come to the sentence. Cao was given the minimum guideline sentence--168 months in prison--based on the amount of drugs attributed to him, a two-level adjustment and his criminal history. We read the guidelines <u>de novo</u>, review factual determinations for clear error and give some deference in the application of general standards to particular facts. <u>See</u> <u>United States</u> v. <u>Gill</u>, 99 F.3d 484, 485 (1st Cir. 1996).

Cao first argues that he should have been given a downward adjustment, as he requested, as a minor or minimal participant. U.S.S.G. § 3B1.2 (2005). Although Cao was doubtless less culpable than the leaders of the conspiracy, that is not enough: he was required to show that he was less culpable than the average participant, <u>United States</u> v. <u>Santos</u>, 357 F.3d 136, 142 (1st Cir. 2004)--a judgment normally made not with statistics but by practical indicia like role, frequency, and duration.

In this case, Cao had more than one source of drugs in Massachusetts (and local sources in Maine), made multiple trips to secure drugs, transported substantial sums of money from Maine to Massachusetts and supplied multiple customers. He was, as the government said, "a player rather than a . . . dabbler," <u>United</u>

-9-

States v. Tom, 330 F.3d 83, 96 (1st Cir. 2003); he did not show himself to be less important than the average; and the district judge was well justified in refusing a downward adjustment.

The district court also made an upward adjustment for obstructing justice on two different grounds:  that Cao had sought to intimidate a witness and that he had committed perjury at his own trial.  U.S.S.G. § 3C1.1.  Both turned on findings of fact that we review only for clear error.  See Gill, 99 F.3d at 485.  In both cases the evidence is adequate, although either finding would support the single adjustment.

As to intimidation, the district court found that Cao had assaulted Joseph Broad, a person to whom Cao had delivered drugs, after learning that Broad's wife was cooperating with the authorities and, "in [the judge's] view," the assault was meant as a warning to Broad's wife not to cooperate.  The finding is not clear error and it is irrelevant under the guideline whether the attempt to intimidate succeeded.  See U.S.S.G. § 3C1.1 & n.4(a).

The perjury finding rested on Cao's trial testimony that he had used drugs but not sold them.  The sales were amply proved. On appeal, Cao argues that the district court failed to find expressly that Cao knew that he had made the sales.  Scienter is a requirement of the enhancement for perjury but the finding in this case is fairly implied from the judge's enhancement and also an entirely reasonable inference by the judge.

-10-

<u>Affirmed</u>.